UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| NICOLE THOMPSON, ) </br> ) </br> Plaintiff, ) </br> ) </br> v. ) </br> ) </br> AUTOLIV ASP, INC., *et al.*, ) </br> ) </br> Defendants. ) </br> ) | 2:09-cv-01375-PMP -VCF </br></br> **O R D E R** |

Before the court are Defendant TRW Automotive U.S. LLC's ("TRW") Motion to Compel (#124) and Memorandum of Points and Authorities in Support of Motion to Compel (#125). Plaintiff Nicole Thompson ("Nicole") filed an Opposition (#129) and Defendant filed a Reply (#133).

**Background**

On April 24, 2009, Nicole, Nicole's mother Shirley Thompson ("Shirley"), and Nicole's father Dennis Thompson ("Dennis"), filed a Complaint against Defendants Autoliv Safety Technology Inc. ("ASP") and TRW, in the Eighth Judicial District Court, Clark County, Nevada. (#1, #1-2 Exhibit A). On July 29, 2009, Defendant ASP removed this action to this Court with the consent of Defendant TRW. (#1). This Court has jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, because there is complete diversity among the parties and because the amount in controversy exceeds $75,000. *Id*.

Plaintiffs filed an Amended Complaint on March 9, 2010. (#33). In response, Defendants asserted fifteen affirmative defenses. (#34). Plaintiffs assert that on April 27, 2007, Plaintiff Nicole suffered "massive, life-threatening, permanent, and irreversible injuries" resulting from a vehicular collision. (#33). Plaintiffs allege that Defendant ASP was "engaged in the business of manufacturing, developing, testing, inspecting, advertising, merchandising, selling and distributing seatbelt systems, including the one that had been installed" in Nicole's vehicle. *Id.* Plaintiffs also allege that the seatbelt

system installed in Nicole's vehicle was defective when it left Defendant ASP's manufacturing facility.[1] *Id.* Plaintiffs assert that because the seatbelt system in Nicole's vehicle was defective, the seatbelt spooled out during the crash, causing/contributing to Nicole's injuries and Plaintiffs' damages. *Id.* Plaintiffs assert causes of action against Defendant ASP for negligence, gross negligence, negligence *per se*, and product defect. *Id.*

Nicole's vehicle was equipped with two front seat airbags. (#76). Defendant TRW designed and manufactured the Airbag Electronic Control Module ("AECM") that was installed in Nicole's vehicle. *Id.* Plaintiffs allege that following improper airbag deployments, TRW had modified the "airbag deployment threshold parameters" to 10 mph "no deploy" and 16 mph "must deploy." (#33). Plaintiffs assert that, although Nicole's impact speed at the time of the accident was 27 mph, the airbags in Nicole's vehicle did not deploy. *Id.* Plaintiffs assert that because the AECM did not function as it was designed to, the AECM caused/contributed to Nicole's injuries. *Id.* Plaintiffs assert causes of action against Defendant TRW for negligence, gross negligence, negligence *per se*, and product defect. *Id.* Plaintiffs seek to recover over $61,000,000 from TRW. (#125).

Plaintiffs allege that Nicole's injuries include: (i) a massive stroke resulting in the paralysis of the right side of her body, including her leg, arm, hand, and fingers; (ii) a wound to her left knee, which later abscessed and had to be treated, resulting in limited movement, lack of feeling in that area of her body, subsequent surgery and permanent scarring; (iii) emergency hospitalization; (iv) vascular surgery in an attempt to repair the dissected carotid arteries in her neck, which resulted in the stroke; (v) extensive physical rehabilitation in an attempt to regain partial use of the paralyzed areas of her body; (vi) intensive speech therapy in an attempt to regain the ability to speak; (vii) medical treatment; (viii) pain medication; (ix) injections; (x) anti-seizure medication; (xi) the need for psychological and emotional counseling to help her adjust to her permanent injuries and paralysis; (xii) the likelihood of

---

[1] Plaintiffs assert that Defendant was aware that the seatbelt would "spool out during a collision," rather than lock in place, causing the occupant of a vehicle to move forward during a crash.

1  additional surgery in the future; (xiii) permanent scarring and disfigurement; and (xiv) future medical
2  care, therapy, and medication for the remainder of her life. (#33).

3        Plaintiffs also allege that "as a direct and proximate result" of Nicole's injuries, Plaintiff Nicole
4  has (i) lost a scholarship; (ii) lost her ability to play the violin as part of an orchestra that she had played
5  with for a number of years; (iii) lost the quality and enjoyment of her life because she is restricted from
6  engaging in most physical activities, and requires the assistance of others; (iv) experienced an increase
7  in emotional distress due to feelings of helplessness and knowledge that her condition was negatively
8  impacting those around her; and (v) become depressed, emotionally volatile, and her memory has
9  become permanently and irreversibly affected. *Id.*

10        Plaintiffs Shirley and Dennis asserted a claim for Infliction of Emotional Distress against both
11  Defendants. (#31). Plaintiffs Shirley and Dennis argued that "as a direct and proximate result of the
12  acts and omissions" of the Defendants, Plaintiffs witnessed their daughter suffer a massive stroke, and
13  were traumatized. *Id.* Plaintiffs also argued that they had been emotionally and financially harmed
14  because of their daughter's injuries. *Id.* On November 1, 2010, the Court found that Defendants TRW
15  and ASP were entitled to summary judgment on Plaintiff's Shirley and Dennis' claim for Infliction of
16  Emotional Distress. (#48). On January 20, 2011, Plaintiffs filed a Joint Appeal. (#58). On March 20,
17  2011, the Court of Appeals dismissed the appeal for lack of jurisdiction. (#89).

18        On April 19, 2011, Plaintiff filed a Motion to Preclude any Testimony, Evidence or Argument
19  Regarding Plaintiff's Seatbelt Use. (#88). Plaintiff argued that Plaintiff Nicole's seatbelt use at the time
20  of the collision is immaterial, and that any probative value would be outweighed by the prejudicial
21  impact to Plaintiff if the seatbelt issue was considered by a jury. *Id.* On September 23, 2011, the Court
22  denied Plaintiff's Motion without prejudice. (#122). On March 30, 2012, Defendant TRW filed a
23  Motion to Compel Plaintiff to respond to "TRW's Interrogatories and Requests for Production of
24  Documents." (#122). On April 6, 2012, Defendant filed a Notice of Withdrawal of Defendant TRW

1  Automotive U.S. LLC's Motion to Compel Without Prejudice.  (#123).

**Motion to Compel (#124)**

### A.     Relevant Facts

On May 8, 2012, Defendant TRW filed the instant Motion to Compel and a Memorandum of Points and Authorities in Support of Motion to Compel.  (#124 and #125).  On May 25, 2012, Plaintiff Nicole filed an Opposition.  (#129).  Defendant filed its Reply on June 4, 2012.  (#133).

### 1.     Defendant's Motion

Defendant moves to compel Plaintiff Nicole "to produce complete and un-redacted copies of Plaintiff's Facebook and other social networking site accounts." (#124).  Defendant requests wall posts, photographs, and messages from April 27, 2007, to the present.  *Id.*  Defendant asserts that Plaintiff improperly objected to TRW's Requests for Production of Documents.  *Id.*  Defendant also asserts that "without claiming any privilege," Plaintiff provided a redacted copy of her Facebook account history and a limited number of photographs.  *Id.*  Defendant asserts that Plaintiff did not provide information from her MySpace account.  *Id.*

In response to TRW's First Set of Interrogatories, Plaintiff described her alleged injuries as including: (i) right upper extremity paralysis; (ii) right sided facial droop with leftward gaze; (iii) stents placed in Plaintiff's neck that are sensitive to stress and that have led to an increased level of anxiety[2]; (iv) reduced visual and reaction time[3]; (v) Plaintiff has no useful independent movement with her right hand and can no longer pick up objects with it; (vi) if/when Plaintiff has children, she will not be able to lift them, nor will she be able to change their diapers, put them into their cribs, push them in their

---

[2] Defendant asserts that Plaintiff alleges that as a result of the stents and the sensitivity of Plaintiff's neck, Plaintiff "can no longer participate in certain activities, such as riding on a roller coaster, snow skiing, snowboarding, water skiing, or any other physical activity that could jar her neck." (#125).

[3] Defendant asserts that Plaintiff alleges that as a result of slower reaction time, caused by her stroke, Plaintiff is not always able to catch herself and ends up falling, generally to her right side.  *Id.*

4

strollers, or care for them without assistance; (vii) Plaintiff has experienced financial damages due to her inability to work in the same capacity as she had done before the accident; and (viii) Plaintiff will need people to assist her in verifying and filling prescriptions because of substantial amounts of pain medication, injections, and anti-seizure medication she has had to take since accident. *Id.*

Defendant TRW asserts that prior to seeking social networking documents through formal discovery requests, TRW obtained wall posts and photographs from Plaintiff's public Facebook profile that "provide evidence of Plaintiff's post-accident social activities, mental state, relationship history, living arrangements, and rehabilitative progress - all of which are relevant to the claims and defenses in this lawsuit." *Id.* Defendant alleges that it obtained wall posts and photographs depicting: (i) Plaintiff's ability to swing on a swing set, dance, and engage in water sports; (ii) Plaintiff's ability to care for children and pets; (iii) Plaintiff's social activities, including consumption of alcohol, bowling with friends, and late night partying; (iv) Plaintiff's sleeping habits; (v) Plaintiff's personal relationships; (vi) Plaintiff's post accident physical recovery; (vii) Plaintiff's employment; (viii) the effect of Plaintiff's medications on her emotional, physical and sexual habits; (ix) offers by Plaintiff to share medications with others; and (x) Plaintiff's enrollment in institutions of higher education. *Id.*

Defendant asserts that shortly after February 8, 2011, Plaintiff changed her Facebook privacy settings, thus blocking the public from viewing Plaintiff's Facebook wall posts and photographs. *Id.* On February 23, 2012, Defendant requested the production of documents and communications related to Plaintiff's Facebook and other social networking site accounts in TRW's Second Request for Production. *Id.* Plaintiff objected to Defendant's request, responding with "[fifty-one] heavily redacted pages" from her Facebook wall, and eight photographs. *Id.* Defendant asserts that contrary to applicable discovery rules, Plaintiff limited production to information and materials that support her allegations. (#133).

Defendant requests that the Court require Plaintiff "to produce for *in camera* inspection i) an

5

un-redacted copy of Plaintiff's entire Facebook account from April 27, 2007 to the present, including wall posts and photographs, and ii) an un-redacted copy of Plaintiff's entire MySpace account." (#125). Defendant argues that this is the only method through which the Court can determine whether Plaintiff has complied with her Rule 26(b)(1) production obligations. *Id.* Defendant also requests an oral argument. (#133).

### 2.     **Plaintiff's Opposition**

Plaintiff asserts that Defendant's request for a complete copy of her social networking site accounts "amounts to nothing more than an overly broad fishing expedition." (#129). Plaintiff also asserts that the "limits of civil discovery mandate that [Defendant] not be provided with unfettered access to Plaintiff's [social networking site] account data." *Id.* Plaintiff argues that Defendant has not made a sufficient showing that the material is reasonably calculated to lead to the discovery of admissible evidence, and that the information sought is irrelevant. *Id.*

Plaintiff asserts that Plaintiff has produced "extensive" social networking site communications in a good faith response to Defendant's discovery requests. *Id.* Plaintiff also asserts that much of the information requested by Defendant is duplicative of other information that Plaintiff has already produced, and is inadmissible. *Id.* Plaintiff argues that Defendant seeks shared information that is not under Plaintiff's control.[4] *Id.* Plaintiff also argues that Plaintiff provided all material that is relevant to Plaintiff's claims. *Id.*

Plaintiff argues that there is "no legitimate basis" for Defendant's request, and as such, that an *in camera* review of her social networking site accounts is not mandated. *Id.* Plaintiff also argues that *in camera* reviews are generally limited to the determination of privilege, not relevance, and relevance is the basis of Plaintiff's objections. *Id.* Plaintiff requests that Defendant's Motion be denied. *Id.*

---

[4] Facebook allows users to "tag" friends in photographs and in wall posts, even where the individual does not request to be "tagged." When an individual has been "tagged" in a photograph or wall post, the photograph (usually of the tagged individual) appears on their Facebook wall and becomes associated with the tagged individual's account.

Plaintiff submits that if the Court conducts an *in camera* review, Plaintiff will provide "an index of redacted [social networking site] communications to assist the court in the process of any such review of the materials, along with the basis for the objections and redactions made by Plaintiff." *Id.*

### B. Discussion

The court has broad discretion in controlling discovery. *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). Under Federal Rule of Civil Procedure 26(b)(1), "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). *Id.* Relevance within the meaning of Rule 26(b)(1) is considerably broader than relevance for trial purposes. *See Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted). For discovery purposes, relevance means only that the materials sought are reasonably calculated to lead to the discovery of admissible evidence. *Id.*

Because Plaintiff has not claimed that the requested information is privileged or protected, the Court finds an *in camera* review of Plaintiff's social networking site accounts unnecessary. Plaintiff opposes Defendant's Motion to Compel on the basis of relevance. Because the alleged consequences of Plaintiff's injuries include severe physical injuries, emotional distress, and impaired quality of life, evidence relating to Plaintiff's physical capabilities and social activities is relevant to Plaintiff's claims in this action. *See* Fed. R. Civ. P. 26(b)(1). The material obtained by Defendant's from Plaintiff's public Facebook account negates Plaintiff's allegations that material on her social networking site accounts is irrelevant to any party's claims and defenses. Under Rule 26(b)(1), this material is discoverable. Fed. R. Civ. P. 26(b)(1).

The Court recognizes that litigation does not permit a complete and open public display of Plaintiff's life. In permitting Defendant access to material from Plaintiff's social networking site accounts, the Court must balance Plaintiff's personal interests. *See* Fed. R. Civ. P. 26(c)(1) (stating that discovery must be conducted so as to protect parties from "annoyance, embarrassment, oppression, or

undue burden"). The parties shall proceed as follows:

(1) Plaintiff shall upload onto an electronic storage device, **all** information from her Facebook and MySpace accounts, from April 27, 2007, to the present. Within ten (10) days from the entry of this order, Plaintiff shall provide Defendant's counsel with the electronic storage device, and an index of redacted social networking site communications.

(2) Defense counsel is not permitted to disclose this material to anyone, with the exception of counsel's support staff as necessary. Defense counsel may review downloaded material and identify material that defense counsel believes is discoverable, but was withheld from Plaintiff's production. Defense counsel must provide a list of material, identified as discoverable, to Plaintiff's counsel within seven (7) days from receipt of the storage device.

(3) If Plaintiff's counsel has a good faith basis for asserting that the listed material is not discoverable, the parties shall file a Joint Report, including (i) a copy of the material, and (ii) each party's position on the discoverability of the material, for the Court's review.

(4) Within ten (10) days after material has been reviewed, and the undersigned Magistrate has issued a ruling, or in the alternative, the parties have resolved the dispute without the Court's intervention, Plaintiff's counsel must provide Defendant's counsel with formal discovery responses, and the storage device must be returned to Plaintiff's counsel. Defense counsel may **not** make a copy of the material on the storage device.

Accordingly and for good cause shown,

IT IS ORDERED that Defendant TRW's Motion to Compel (#124) is GRANTED in part and DENIED in part, as discussed above.

. . .

1   IT IS FURTHER ORDERED that the parties shall proceed as outlined above.

2       DATED this 20th day of June, 2012.

                                            _____
                                            **CAM FERENBACH**
                                            **UNITED STATES MAGISTRATE JUDGE**

9