1
2
3
4                    **UNITED STATES DISTRICT COURT**
5                         **DISTRICT OF NEVADA**
6

7   NICOLE THOMPSON,                        )
8                           Plaintiff,       )        Case No. 2:09-cv-01375-JAD-PAL
                                             )
9   vs.                                      )                **ORDER**
                                             )
10  TRW AUTOMOTIVE U.S. LLC.,                )        (Mot. Designate Rebuttal Expt - Dkt. #171)
                                             )
11                          Defendant.       )
    _____)
12

13        Before the court is Plaintiff's Motion to Designate Rebuttal Expert Ted Zinke (Dkt. #171).  The
14  court has considered the Motion, Defendant's Response (Dkt. #173), and Plaintiff's Reply (Dkt. #191).
15  This is an old case by federal standards and was set for jury trial October 22, 2013, when this matter
16  was referred to me by the newly-assigned district judge.  On October 4, 2013, the district judge granted
17  Plaintiff's Emergency Ex Parte Motion for Trial Continuance (Dkt. #194), and jury trial has been
18  continued to June 17, 2014.  This case was reassigned to the undersigned by random draw after the
19  presiding magistrate judge recused following a settlement conference.  *See* Minute Orders in Chambers
20  (Dkt. ##155, 157).  The case was also reassigned to a new district judge August 9, 2013.  *See* Minute
21  Order in Chambers (Dkt. #163).  There are a number of motions in limine pending.  The district judge
22  granted the parties' stipulation to continue the responses to those motions until October 23, 2013, but
23  referred this motion to the undersigned.

24                              **BACKGROUND**

25        The complaint in this case was filed in state court and removed (Dkt. #1) July 29, 2009.  It
26  arises out of a motor vehicle accident on April 27, 2007.  Plaintiff alleges she was severely injured and
27  suffered a massive stroke as well as other permanent and debilitating injuries when the air bag in her
28  vehicle failed to deploy as she hit a power pole at nearly thirty miles per hour.

1    On January 17, 2013, Defendant filed a Motion to Substitute Expert (Dkt. #150) after the close

2    of discovery and after the parties had already submitted their joint pretrial order.  The motion was

3    granted because T.R.W.'s designated air bag expert unexpectedly died.  The district judge granted the

4    motion in an Order (Dkt. #156) entered March 15, 2013, which gave Defendant leave to substitute an

5    expert witness for the late Dr. Russell Brantman, and to supplement its expert disclosures with a report

6    from the substitute expert witness.  T.R.W. designated two previously disclosed witnesses and served

7    Plaintiff with two supplemental reports for two substitute experts for Dr Brantman June 3,2013.  Before

8    the reports were served, counsel for the parties generally discussed allowing Plaintiff to name a rebuttal

9    expert and disclose a rebuttal expert report by September 6, 2013.  According to Plaintiff's counsel,

10   defense counsel generally agreed to the date, but stated he would not agree to disclosure of a rebuttal

11   expert on anything other than new opinions.

12   Counsel for Plaintiff took the deposition of the two substitute experts, Jeffrey Rochett and

13   Jeffrey Pearson, on July 25, 2013.  Both witnesses had previously been deposed as Rule 30(b)(6)

14   designees.  However, Plaintiff did not obtain transcripts for the two depositions until August 5, 2013.

15   After reviewing the transcripts and conferring, Plaintiff's attorneys determined a limited rebuttal expert

16   was necessary to address opinions given by T.R.W.'s two replacement experts.  Counsel for Plaintiff

17   requested that T.R.W.'s counsel stipulate to the disclosure of Mr. Zinke to avoid motion practice.

18   However, on August 30, 2013, opposing counsel responded in writing that he was unwilling to stipulate

19   because he did not believe that T.R.W.'s replacement experts had given any new opinions.  This motion

20   was filed the same day.  Counsel represents the motion was not filed earlier because Plaintiff's counsel

21   needed the deposition transcripts of the two experts to decide whether to designate a rebuttal expert.

22   Additionally, Plaintiff's counsel reasonably believed they would have until September 6, 2013, to

23   submit a rebuttal expert report based on discussions with opposing counsel.  Counsel for Plaintiff

24   acknowledges that counsel for Defendant indicated he would not agree to the disclosure of a rebuttal

25   expert on anything other than new opinions.  However, counsel for Plaintiff agreed to a September 6,

26   2013, deadline for the Plaintiff to submit a rebuttal disclosure.

27   Plaintiff argues that when Defendant's original expert, Dr. Brantman, was designated as a

28   proposed T.R.W. expert that his area of expertise focused on systems integration and the overall safety

2

1    systems.  However, after Dr. Brantman passed away and the court permitted T.R.W. to name a

2    substitute expert, the two substitute experts went beyond Mr. Brantman's original findings.  Messrs.

3    Rochett and Pearson testified on how air bag suppression during the power pole collision had been

4    appropriate, and offered two new theories and opinions.  These two witnesses now opine that the

5    Plaintiff was out of position during the collision.  Instead of moving to strike T.R.W.'s substitute

6    experts or their "new found opinions", Plaintiff is merely seeking to designate a rebuttal expert to

7    address these additional opinions.

8         T.R.W. opposes the motion arguing Plaintiff seeks to designate a new air bag expert under the

9    guise of a rebuttal where there are no new opinions to rebut.  The two substitute experts are both former

10   employees and had previously been designated as experts.  They offer the same opinions Dr. Brantman

11   offered in 2010.  T.R.W. maintains that the late designation of Zinke as a rebuttal expert is neither

12   substantially justified nor harmless.  Additionally, T.R.W. disputes that Pearson and Rochett offer new

13   opinions.  Dr. Brantman opined that air bag suppression during the pole collision was appropriate in

14   this collision.  Specifically, he opined that the decision not to deploy the air bag was correct and that the

15   system performed exactly as designed.  Plaintiff's defect theory is that the air bag should have deployed

16   in this crash and her three liability experts have offered their opinions about whether air bag

17   deployment was appropriate.  Pearson addressed the topic from an occupant protection standpoint, and

18   Rochett addressed it from an electronics perspective.  T.R.W. contends their "treatment of this topic . . .

19   is no surprise and simply follows in the footsteps of Brantman."

20        Similarly, expert testimony that de-powered air bags can cause serious and fatal injuries has

21   been thoroughly covered by prior expert reports and depositions.  Plaintiff's experts have opined that

22   de-powered air bags are not dangerous.  Brantman disagreed with Plaintiff's experts, wrote about it in

23   his original October 10, 2010, report, and testified extensively at his January 2012 deposition about this

24   topic.  T.R.W. also disputes that the substitute experts introduced a new topic by testifying that Plaintiff

25   was dangerously close to the air bag module.  Dr. Brantman covered this topic in his report, his rebuttal

26   report, and at his deposition, and Plaintiff's own experts have addressed this topic as well.

27        Finally, T.R.W. contends Plaintiff's attempt to designate a new expert on the eve of trial is

28   prejudicial.  The motion was filed one month before the scheduled trial date.  Plaintiff had Pearson and

1   Rochett's supplemental expert reports June 3, 2013, but delayed filing the motion for three months.

2   Under these circumstances, counsel for T.R.W. is "buried in pre-trial and trial preparations", and

3   addressing Mr. Zinke's testimony would involve substantial work such as investigating the expert's

4   background and opinions, reviewing another expert file, deposing the expert and preparing for cross-

5   examination.  Plaintiff already has four liability experts and four damage experts, and T.R.W.'s use of

6   two former employees to fill the void left by Dr. Brantman's death do not justify a late designation of

7   Zinke.

8       Plaintiff replies that designating Zinke as a rebuttal expert would not have been necessary if

9   T.R.W.'s replacement experts had only categorically adopted all of the opinions Dr. Brantman had

10  given in this case.  However, this is not what occurred.  Plaintiff maintains that both experts went

11  outside Brantman's original opinions and analyzed everything else that had happened during the seven

12  months since Dr. Brantman passed away.  Plaintiff asserts that both replacement experts "re-shaped, re-

13  focused, and put entirely new spins on the opinions they liked, while quietly omitting the ones that had

14  become problematic for T.R.W."  As such, Dr. Brantman's report and opinions were materially altered

15  and replaced with new opinions.  Therefore, the court "should now level the legal playing field" and

16  grant the motion.

17      Plaintiff argues that T.R.W. cannot claim surprise where, as here, the parties discussed

18  designating a rebuttal expert.  Although opposing counsel maintains there was nothing to rebut, he was

19  clearly aware that Plaintiff was reserving the right to designate a rebuttal expert.  Any prejudice caused

20  by the late designation can be cured as counsel for Plaintiff has always indicated a willingness, if

21  necessary, to move the trial date for a short period of time to allow T.R.W. to conduct the necessary

22  discovery, including deposing Mr. Zinke.  At the time the reply was filed, Plaintiff acknowledged that

23  the trial date was close at hand.  However, the parties had not yet exchanged exhibit books or

24  demonstrative evidence, or issued subpoenas.  The deadlines for trial briefs, voir dire, and jury

25  instructions had not yet run.

26      Plaintiff's attorneys spent several thousands of dollars on Mr. Zinke's services and spent

27  considerable effort reviewing the replacement experts' new reports, comparing them the Brantman's

28  old report and deposition transcripts, researching and finding an appropriate rebuttal expert, and

1  discussing the case with the proposed expert.  This demonstrates Plaintiff's good-faith belief that

2  designating Mr. Zinke as a rebuttal expert was a necessity.

3

4  **DISCUSSION**

5  **I.      Applicable Law.**

6          Federal Rule of Civil Procedure ("Rule") 26 requires parties to disclose the identity of any

7  person who may be used as an expert witness.  Fed. R. Civ. P. 26(a)(2)(B).  Rule 26 provides that,

8  "[t]hese disclosures shall be made at the times and in the sequence directed by the court."  Fed. R. Civ.

9  P. 26(a)(2)(C).  Local Rule LR 26-1(e)(3) provides:

10                 Unless the discovery plan otherwise provides and the court so orders, the
                time deadlines specified in Federal Rule of Civil Procedure 26(a)(2)(C) for
11               disclosure concerning experts are modified to require that the disclosures be
                made sixty (60) days before the discovery cut-off date and that disclosures
12               respecting rebuttal experts be made thirty (30) days after the initial
                disclosure of experts.
13

14  LR 26-1(e)(3).

15          Rule 26(a)(2)(C) defines rebuttal testimony as "evidence [that] is intended solely to contradict

16  or rebut evidence on the same subject matter identified by another party" and requires that rebuttal

17  witnesses be disclosed within thirty days after the parties disclose their witnesses.  Fed. R. Civ. P.

18  26(a)(2)(C).

19          Fed. R. Civ. P. 37 authorizes sanctions for a party's failure to make disclosures or cooperate in

20  discovery.  Rule 37(c)(1) provides, in relevant part:

21                 A party that without substantial justification fails to disclose information
                required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery
22               as required by Rule 26(e)(2), is not, unless such failure is harmless,
                permitted to use as evidence at a trial, at a hearing, or on a motion any
23               witness or information not so disclosed.

24  Fed. R. Civ. P. 37(c)(1).  Rule 37(a)(3) explicitly provides that an evasive or incomplete disclosure,

25  answer, or response to a discovery obligation "is to be treated as a failure to disclose, answer, or

26  respond."

27  / / /

28  / / /

5

## II.      Analysis and Decision

T.R.W.'s designated expert, Dr. Brantman, unexpectedly passed away.  Defense counsel requested that Plaintiff's counsel stipulate to allow Defendant to designate a replacement expert. Counsel for Plaintiff declined to stipulate in a letter dated January 3, 2013, citing prejudice to the Plaintiff.  *See* January 3, 2013, letter attached as Exhibit 8 to Defendant's opposition.  In the letter, counsel for Plaintiff also explained his refusal to stipulate was because "Mr. Brantman's areas of expertise were duplicative, if not identical, to the opinions that have also been given by T.R.W.'s other experts, Jeff Rochett and Mr. Pearson."  *Id*.  The letter stated the opinion of counsel for Plaintiff that T.R.W.'s two other air bag experts "have already adopted and relied upon Mr. Brantman's opinions", and as a result defense counsel was "essentially asking Plaintiff's counsel to agree to a fourth air bag expert at the eleventh hour." *Id*.

T.R.W. then filed a Motion for Leave to Substitute (Dkt. #150).  In the motion, defense counsel argued that substitution was justified based on Dr. Brantman's untimely death because he was the "only expert designated to provide opinions concerning the performance of the subject sensor in this specific crash event involving Plaintiff."  Plaintiff opposed the motion arguing discovery had been closed since March 30, 2012, and allowing substitution would cause Plaintiff to incur tens of thousands of dollars in additional costs.  Additionally, counsel for Plaintiff argued that allowing substitution would allow the new expert to fix deficiencies, modify previous opinions, and tailor his or her report based on full access to the opinions of all of the experts on both sides of the case.  The opposition reiterated arguments made in the letter that T.R.W. already had three other similarly-qualified expert witnesses, "who gave virtually identical opinions when their depositions were taken in this case."  The opposition also cited correspondence received from T.R.W.'s counsel indicating he would request that the new expert prepare a report in the format following the report and supplemental report of Dr. Brantman. The letter indicated that T.R.W. would ask the new expert to provide "an indication of how and where the new expert disagrees with or adds new opinions to those previously provided by Dr. Brantman." Plaintiff's counsel cited this language to support his arguments that T.R.W. would use the new expert to fix deficiencies in prior expert testimony to gain an unfair advantage.

/ / /

6

1    The district judge granted Defendant's motion for leave to substitute expert in an Order (Dkt.

2    #156) entered March 8, 2013.  T.R.W. then designated Rochett and Pearson as the experts to replace

3    Dr. Brantman's opinions.  The parties dispute whether the designation of Pearson and Rochett as

4    substitute witnesses for Dr. Brantman materially changed the expert opinions of Dr. Brantman as

5    evidenced in his October 29, 2010, his rebuttal report, and deposition testimony.

6    The court has carefully reviewed the moving and responsive papers and voluminous reports,

7    deposition transcripts and supporting exhibits and finds that T.R.W.'s substitution of Messrs. Pearson

8    and Rochett for the late Dr. Brantman does not warrant allowing Plaintiff to designate an additional

9    rebuttal expert.  Briefly summarized, Dr. Brantman offered opinions about the accident scenario, the

10   sensor performance, the sensor condition, and analysis of why an air bag sensor is designed to prevent

11   firing on "concatenated events."  He opined that the system in the vehicle was state of the art, and

12   designed to prevent the air bag from deploying during concatenated events, *i.e.*, multiple events in close

13   succession, leading up to the pole impact.  His report and deposition testimony explain how a deployed

14   air bag can be dangerous to a vehicle occupant, and why the vehicle's air bag's sensor system and

15   supplemental restraint system are designed not to deploy under certain circumstances.  Dr. Brantman

16   also rebutted the opinions of Plaintiff's expert, Chris Caruso, concluding that all of Mr. Caruso's defect

17   claims were based on the assumption that the system should have deployed when the Plaintiff's vehicle

18   crashed into the pole.  Dr. Brantman opined that Caruso's defect claims were "all meaningless" because

19   the system performed exactly as it was designed by not deploying in circumstances when there was a

20   high risk of injury to an occupant close to an air bag module.  Dr. Brantman's rebuttal report also

21   opined that Caruso's opinions were contradicted by Plaintiff's biomechanic expert, Dr. Orner, and

22   Plaintiff's accident reconstructionalist expert, Kerry Berg.

23   Jeffrey Pearson's June 3, 2013, report is attached as Exhibit 18 to T.R.W.'s opposition.  Jeffery

24   Rochett's June 3, 2013, report is attaches as Exhibit 19.  Pearson was asked to review Dr. Brantman's

25   files and report and to "address certain occupant restraint and crash sensing concepts and issues already

26   covered in my report of October 26, 2010, and my deposition of January 10, 2012, but more specifically

27   as they relate to the 1998 Dodge Neon and the collision circumstances at issue in this matter."  The

28   court's review of his report indicates he did so and offered opinions and rebuttal opinions previously

offered by Dr. Brantman. Rochett was asked to "provide additional analysis concerning the subject 1998 Dodge Neon crash sensing system and its performance in the subject crash." He prepared a report which supplemented his original report and three depositions based on additional information he had been provided. The court's review of his report, opinions and conclusions indicates that he also closely mirrored the testimony and opinions offered by Dr. Brantman.

Neither of these two experts offered opinions which should have come as a surprise to the Plaintiff in light of the prior reports and testimony Dr. Brantman provided. Counsel for Plaintiff re-deposed both substitute experts who had been previously disclosed and deposed. Their reports were served June 3, 2013, and their depositions were taken on July 25, 2013. It was not until after counsel for Plaintiff obtained the transcripts of their July 25, 2013, depositions, poured over them, compared their testimony to Dr. Brantman's and conferred among themselves, that the decision was made to request leave for another rebuttal expert. The amount of time and effort that went into trying to find discrepancies illustrates that Plaintiff has not been prejudiced by new opinions offered by the substitute witnesses. While Pearson and Rochett may not have parroted Dr Brantman's precise manner of expressing his opinions the court finds that they did not materially alter the opinions he had previously offered. In short, the court finds that Plaintiff has not been surprised by any substantively or materially new opinions offered by Pearson and Rochett substituting for Dr. Brantman.

For these reasons,

**IT IS ORDERED** Plaintiff's Motion to Designate Rebuttal Expert (Dkt. #171) is **DENIED**.

Dated this 17th day of October, 2013.

Peggy A. Leen
United States Magistrate Judge

8