EDWARD J. ACHREM & ASSOCIATES, LTD.
Edward J. Achrem, Esq.
Nevada Bar No. 2281
512 South Tonopah, Ste. 100
Las Vegas, Nevada 89106
Phone:  (702) 734-3936
Fax:  (702) 734-7199
ejachrem@aol.com
Counsel for Plaintiff

MAGANA, CATHCART & MCCARTHY
Clay Robbins, III, Esq.
California Bar No. 101275
1801 Avenue of the Stars
Suite 600
Los Angeles, CA 90067
Phone:  (310) 553-6630
Counsel for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| NICOLE THOMPSON, SHIRLEY THOMPSON, and DENNIS THOMPSON, | Case No.: 2:09-cv-1375-JAD-PAL |
| Plaintiffs, | |
| vs. | |
| TRW AUTOMOTIVE U.S. LLC, a Delaware Corporation, licensed) in Nevada, DOE DEFENDANTS I-X and ROE CORPORATIONS I-IX, inclusive, | |
| Defendant. | |

**PLAINTIFF'S RESPONSE TO TRW'S MOTION IN LIMINE**

Plaintiff, by and through the law firms of Edward J. Achrem & Associates, Ltd., and Magana, Cathcart and McCarthy, hereby responds to TRW's Motion in Limine (Doc. No. 185). Plaintiff will address the categories listed in TRW's Motion in the same order each was raised.

1

Because some of TRW's motions have already been addressed in motions in limine that were simultaneously filed by the Plaintiff, appropriate references will be made.

1.    Customer Complaints.[1]

While Plaintiff readily agrees that "irrelevant, unreliable, and unsubstantiated" customer complaints (Motion, 2:5) should not be allowed at trial, this does not preclude Plaintiff's experts from using the formal Customer Assistance Inquiry Records (i.e., "CAIR" reports) Chrysler had utilized to keep track of customer complaints regarding the Dodge Neons, and which TRW has had since early 2010.    The CAIR reports Plaintiff wants to use pertain to airbag and seatbelt complaints that were being made regarding 1997 and 1998 Dodge Neons, which utilized the same AECM.    The selected CAIR records also focus on collisions that involved poles, trees or other vertical posts and/or seatbelts that failed to lock in concatenated events.[2]    Since the matter was addressed in Plaintiff's Fourth Omnibus Motion in Limine, (Doc. No. 190, 11:19-17:12,) the Court is referred to that document and the arguments made therein are hereby incorporated by reference.

As for the federal rules and cases TRW cites in its motion,

---

[1]    *In its motion, TRW advises the Court that it intends to provide "additional trial briefing on this limine point in accordance with deadlines specified in the Court's Minute Order (Doc. 164)." Motion, 2:15-17. With all due respect, whatever TRW may intend to submit on this subject later on should be ignored in the current context, as alluding to filing documents in the future to support a Motion now is not a basis for granting it.*

[2]    *If the Court grants Plaintiff's seatbelt motion (Doc. # 167), then the seatbelt complaints would be redacted.*

Edward J. Achrem & Associates
512 South Tonopah Dr., Suite 100 • Las Vegas, Nevada 89106
(702) 734-5926 • Fax (702) 734-7199

they're inapplicable.  For example, TRW's reference to cases in which customer complaints regarding dissimilar products or dissimilar product failure modes are not relevant. (Motion, 2:11-13).  One of those cases was <u>Cooper v. Firestone Tire & Rubber Co.</u>, 945 F.2d 1103, 1105 (9th Cir. Ariz. 1991), in which the Court held:

> "A showing of substantial similarity is required when a plaintiff attempts to introduce evidence of other accidents as direct proof of negligence, a design defect, or notice of the defect. See, e.g., <u>Pau v. Yosemite Park and Curry Co.</u>, 928 F.2d 880, 889 (9th Cir. 1991); <u>Jackson v. Firestone Tire & Rubber Co.</u>, 788 F.2d 1070, 1082-83 (5th Cir. 1986); <u>Brooks v. Chrysler Corp.</u>, 252 U.S. App. D.C. 29, 786 F.2d 1191, 1195 (D.C. Cir. 1986); <u>Borden, Inc. v. Florida East Coast Ry. Co.</u>, 772 F.2d 750, 754 (11th Cir. 1985); <u>McKinnon v. Skil Corp.</u>, 638 F.2d 270, 277 (1st Cir. 1981); <u>Julander v. Ford Motor Co.</u>, 488 F.2d 839, 846-47 (10th Cir. 1973). The rule rests on the concern that evidence of dissimilar accidents lacks the relevance required for admissibility under Federal Rules of Evidence 401 and 402. See <u>Pettyjohn v. Kalamazoo Center Corp.</u>, 868 F.2d 879, 881 (6th Cir. 1989); <u>McGonigal v. Gearhart Indus., Inc.</u>, 851 F.2d 774, 778 (5th Cir. 1988)."

<u>Id</u>, 945 F.2d 1103, 1105.

In <u>Cooper</u>, the evidence the Plaintiffs were trying to introduce pertained to different products.  That is not the case at bar.  Additionally, Plaintiff won't be using the CAIR reports to demonstrate direct negligence, design defect, or notice of the defect.  Rather, she will use the information to demonstrate the public's expectations and TRW's knowledge.  Since the CAIR complaints also pertain to TRW's independent duty to warn Chrysler and/or the public about the Owner's Manual airbag suppression misstatements, the reports continue to be admissible.

The CAIR reports also constitute records of a regularly conducted business activity by Chrysler. FRE 803(6). Because the records were certified in discovery, they are also self

Edward J. Achrem & Associates
512 South Tonopah Dr., Suite 100 • Las Vegas, Nevada 89106
(702) 734-8956 • Fax (702) 734-1709

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Edward J. Achrem & Associates
512 South Tonopah Dr., Suite 100 • Las Vegas, Nevada 89106
(702) 734-3956 • Fax (702) 734-7199

authenticating.   FRE 902(11). If the Court deemed it necessary, Plaintiff would also obtain a Custodian of Records affidavit, or call a witness at trial to further authenticate the records.

2.   Other Allegedly Similar Incidents.

This appears to be an offshoot of Motion in Limine No. 1 above.[3]   To the extent TRW additionally discusses Mr. Caruso's previous testimony, the following observations are made.

First, expert witnesses do not have to personally review and analyze every reported customer complaint about a product before they're allowed to give product liability testimony at trial. Even though Mr. Caruso did not personally review each and every report prior to his deposition (many of which Plaintiff won't be submitting anyway), this doesn't prevent him from doing so prior to trial, as further support for the same opinion he has continued to give (i.e., that as a consumer, Ms. Thompson had a reasonable expectation her airbag would deploy in this collision).

Second, TRW's motion in limine is, at best, premature.   For example, TRW concedes in the very first sentence that if Plaintiff first establishes "the evidentiary foundations of relevance and substantial similarity" (Motion, 2:19-20), the evidence comes in. Although TRW selectively refers to a few snippets from Mr. Caruso's deposition to suggest his testimony can't be considered (because he didn't have the particulars of every collision where airbags failed to deploy), experts are clearly allowed to use hearsay

[3]   *Because TRW again states its intention to provide "additional trial briefing" later on, there's nothing for Plaintiff or the Court to address.*

4

information to help formulate their opinions:

> "An expert may rely on hearsay in formulating his opinion, 'if of the type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.' Fed. R. Evid. 703."

United States v. Giese, 1991 U.S. App. LEXIS 2645 (9th Cir. Feb. 19, 1991). See also United States v. Beltran-Rios, 878 F.2d 1208, 1213 n.3 (9th Cir. 1989); and City Parkway v. Union Pac. R.R. Co., 911 F. Supp. 2d 1022, 1034 (D. Nev. 2012).

In City Parkway v. Union Pac. R.R. Co., 911 F. Supp. 2d 1022, (D. Nev. 2012), Judge Pro allowed an expert to rely on another expert's testing:

> "Union Pacific argues in its Reply that the report of Plaintiffs' expert, Kurt Goebel ("Goebel"), is inadmissible hearsay because it is based on a reported finding of soil in the area that exceeded the TPH level and not based on Goebel's own on-site investigation. An expert may rely on hearsay or other inadmissible evidence so long as his opinion is based on facts or data upon which experts in the field reasonably rely. Fed. R. Evid. 703. Union Pacific does not suggest or explain why it would be unreasonable for Goebel to rely on the soil testing done by City Parkway's contractor or based on a review of site-related documents at NDEP. Union Pacific does not, and so far as the record reveals never has, challenged the actual results of any of the soil testing which showed TPH levels exceeding 100 mg/kg in some of the excavated soil. Union Pacific does not point to a Rule of Evidence or case law requires an expert to personally conduct all testing upon which he bases his opinion. Consequently, the Court will overrule Union Pacific's objection to Goebel's report."

Id at 1034.

Third, other incidents don't have to be identical in order to be relevant. See Andrews v. Harley Davidson, 106 Nev. 533 (Nev. 1990), [Despite notable differences, Plaintiff's accident was still similar enough to the others for evidence to be introduced into the record]. See also, Krause v. Little, 117 Nev. 929, 937 (Nev. 2011)

Edward J. Achren & Associates
512 South Tonopah Dr., Suite 100 • Las Vegas, Nevada 89106
(702) 734-3956 • Fax (702) 734-1709

[Incidents in other claims were similar enough that the jury could reasonably infer the same defect was present in the current one].

As applied here, there is enough information supplied in the Chrysler CAIR reports for the jurors to reasonably infer that suppressing the newly-mandated depowered airbags during a fully-documented, high speed frontal collision which was preceded by concatenated events is outside the normal consumer's expectation as to when the airbags should deploy.   Plaintiff will also be focusing on frontal collisions involving 1997 and 1998 Dodge Neons, both with and without concatenated events, at varying speeds, and intends to use the CAIR reports to demonstrate the circumstances under which a reasonable consumer would expect airbag deployment.

Because the CAIR reports were also the way auto and component manufacturers would obtain feedback to correct problems, Mr. Caruso has every right to utilize and rely on the CAIR reports and the documented customer complaints to support his opinions.    The reports also go to feasibility and allow Mr. Caruso to discuss the various ways complaints are received and the fact that TRW should have known that Chrysler had a massive source of information by which it could track ongoing airbag complaints, even though TRW elected to ignore those customer complaints.    Ironically,  TRW doesn't have a problem asking the Court for permission to show the jury a straight 30-mph sled test, with no concatenated events preceding it, even though it's clearly not substantially similar to Plaintiff's 4/27/07 collision.   See Exhibit "2" to the Joint Pretrial Order, Doc. No. 137-2 p. 20,  TRW's Proposed Exhibit 405,

VC04683, which is a Chrysler test video of the above described.

3.   Vehicle Ratings.

In this motion, TRW doesn't want the jury to learn that Plaintiff's 1998 Dodge Neon only had a 3 Star crash rating, arguing the information would be irrelevant and that TRW's AECM is "merely one component in the subject vehicle." (Motion, 3:11). While TRW is welcome to make that argument at trial, and the jury can give it the appropriate weight, TRW had been working with Chrysler for more than a decade on the Dodge Neon platform and had actual knowledge that the Plaintiff's vehicle had substantial weaknesses during various frontal crash events and a poor crash rating. Since Chrysler had relied on TRW to come up with the best crash sensor for this particular vehicle, its knowledge of the crash rating was, or at least should have been, a critical part of its analysis.

On the one hand, TRW wants to avoid responsibility for the crashworthiness of the vehicle, yet on the other, TRW wants to rely on the vehicle's crashworthiness when it comes to its defenses regarding seatbelts. (See TRW's Response to Plaintiff's Motion to Preclude and Testimony, Evidence or Argument Regarding Seatbelt Use, Doc. No 170-2, pp. 8:1-19-9:2). Using this as both a sword and a shield should not be allowed.

4.   NHTSA Recalls.

Plaintiff won't introduce evidence or argument for recalls of a "different product and/or for a problem different than the one alleged in this case," (Motion, 3:28-4:1).  The issue is moot.

5.   "Day in the Life" Audio.

Edward J. Achrem & Associates
512 South Tonopah Dr., Suite 100 • Las Vegas, Nevada 89106
(702) 734-5030 • Fax (702) 734-7169

Because the parties' motions in limine were due the same day, TRW didn't realize Plaintiff had already voluntarily agreed to remove the song that was playing in the background of the "Day in the Life" video, and to replace it with soft, instrumental-only background music.  TRW was sent a copy of the presentation that contained the instrumental music with Plaintiff's Third Omnibus Motion in Limine (Doc. # 189-7) on 9/23/13.  If TRW attempts to remove all audio, including statements being made by the Plaintiff, her mother and her step-mother, then the Court is referred to the arguments raised in Plaintiff's Third Omnibus Motion in Limine (Doc. # 189, 10:7-14:6).

6.   <u>Seat Belt Habit</u>.

First, if the Court grants Plaintiff's seatbelt motion, the issue becomes moot.  Second, the Plaintiff has every right to discuss and describe her fastidious seatbelt use every time she would get into anyone's car, whether as a driver or passenger. Third, if Plaintiff's seatbelt use becomes an issue in the case, Plaintiff will lay the necessary foundation to demonstrate that wearing her seatbelt every time she was in anyone's vehicle was a routine practice Nicole had followed since she was a child.   That practice will then be corroborated by the individuals identified in Plaintiff's Fourth Omnibus Motion in Limine, whose affidavits were attached thereto as collective Exhibit "1" (Doc. # 190-1).

Since the seatbelt witnesses repeatedly drove with Nicole prior to the collision and always saw her use and put her seatbelt on, the <u>Mathes</u> case cited by TRW actually supports Plaintiff's

8

position.

> "We agree with the Fourth Circuit; that 'habit or pattern of
> conduct is never to be lightly established, and evidence of
> examples, for purpose of establishing such habit, is to be
> carefully scrutinized before admission. . . . It is only when
> the examples offered to establish such pattern of conduct or
> habit are 'numerous enough to base an inference of systematic
> conduct' . . . that they are admissible to establish pattern
> or habit."

Mathes v. The Clipper Fleet, 774 F.2d 980, 984 (9th Cir. Cal.

1985) [Quoting Wilson v. Volkswagen of America, Inc., 561 F.2d 494,

511 (4th Cir. 1977) (quoting Strauss v. Douglas Aircraft Co., 404

F.2d 1152, 1158 (2d Cir. 1968)), cert. denied, 434 U.S. 1020, 98

S. Ct. 744, 54 L. Ed. 2d 768 (1978).]

See also, Morris v. Long, 2012 U.S. Dist. LEXIS 112368, (E.D.

Cal. 8/8/12), which discussed the factors to be considered:

> "It is only when the examples offered to establish such
> pattern of conduct or habit are numerous enough to base an
> inference of systematic conduct and to establish one's
> regular response to a repeated specific situation or, to use
> the language of a leading text, where they are sufficiently
> regular or the circumstances sufficiently similar to outweigh
> the danger, if any of prejudice and confusion, that they are
> admissible to establish pattern or habit. In determining
> whether the examples are numerous enough and 'sufficiently
> regular, the key criteria are adequacy of sampling and
> uniformity of response, or, as an article cited with approval
> in the Note to Rule 406 . . . puts it, on the adequacy of
> sampling and the ratio of reactions to situations."

Id, 35-36 [Internal quotations and citations omitted.]

Multiple witnesses all say they drove with Nicole and that she

always wore her seatbelt.   Their testimony should be allowed.

7.   Police Conclusions Regarding Seat Belt Use.

TRW doesn't want the jury to learn that when the first Metro

Officer who spoke with the Plaintiff after the collision asked

whether she had been wearing her seatbelt, Nicole immediately said

Edward J. Achrem & Associates
512 South Tonopah Dr., Suite 100 • Las Vegas, Nevada 89106
(702) 734-5030 • Fax (702) 734-7199

"yes." This is relevant and admissible evidence, for several reasons.

First, when Metro arrives at a crash scene, unless the driver is unconscious, she will rarely still have her seatbelt on, as she has already been moved by paramedics for transport. While Officer Whipple may not have personally observed Ms. Thompson with her seatbelt still on, that doesn't preclude his observation that even though she was badly shaken, Nicole immediately confirmed she had been wearing her seatbelt at the time of the collision - the same thing she also told to the responding paramedics at the scene.

Second, Officer Whipple isn't being asked to give any expert opinions on causation, seatbelt defects, or product failures. He's simply going to testify that when she was asked, Ms. Thompson said her seatbelt had been on during the crash. The jury can then give the statement whatever weight it believes to be appropriate.

Third, the fact that Officer Whipple noted seatbelt use in his report allows the statement to come in under the business records hearsay exception, and to refresh the Plaintiff's memory as to whether she was wearing her seatbelt at the time of the crash.

Other than the Plaintiff herself, no one was around to witness that Nicole had her seatbelt on. However, that doesn't mean the statement can't be considered. It's simply circumstantial evidence that can be weighed and considered by the jury.

If allowed, TRW will present witnesses and evidence to try and persuade the jury that Ms. Thompson wasn't wearing her seatbelt. This will be in contrast to the statements Ms. Thompson gave to

10

Metro and the responding paramedics.  This will then be combined with Plaintiff's seatbelt expert's opinions regarding the belt marks and the physical evidence he observed.

Plaintiff will also be presenting other evidence, such as (i) the bruising on Nicole's left hip that was observed in the hospital, (ii) the testimony of Plaintiff herself, Amy Thompson and Shirley Thompson that all three saw bruising on both hips; (iii) the fact that Nicole was never ejected from the vehicle and didn't break a single bone during the 30 mph crash, and (iv) the numerous witnesses who have observed her fastidious seatbelt use over the years.  The jury can then draw its own conclusions.

Officer Whipple will be asked about his investigation, which includes conversations he had with the EMTs and the Plaintiff.  TRW can then cross examine him regarding those observations and statements.  This won't cause jury confusion or prejudice.  Because her statements were also made close in time to the event, they fall within the FRE 803(1) (Present Sense Impression) and FRE 803(2) Excited Utterance, exceptions to the hearsay rule.

Plaintiff will now address the remaining categories listed in TRW's Motion (Doc. # 185), even though Nos. 8 through 35 appear to have been cut and pasted from previous motions in other cases.

8.    Equally Available Witnesses.

There is no statutory, legal precedent or other support for this motion, nor was any context provided.  The motion appears to request relief the Court won't be able to fairly understand or appreciate, much less provide.  As such, this motion should be

11

1   disregarded, pursuant to LR-7(d), which states in relevant part:

2       "The failure of a moving party to file points and authorities
3       in support of the motion shall constitute a consent to the
        denial of the motion."

4       To the extent any response can be given, TRW had the

5   opportunity to identify and call all of the Chrysler employees with

6   whom it had worked during the development of the AECM and airbag

7   system for the 1998 Dodge Neon.  At trial, it's anticipated TRW

8   will argue it had worked closely with Chrysler and that the two

9   companies had regularly discussed the development of the AECM and

10  the deployment parameters for the airbags.  The fact that TRW

11  failed to identify any such witnesses is something the jury should

12  be permitted to weigh and consider when it deliberates.

13  9.   Testimony of Unavailable Witnesses.

14      TRW doesn't want a reference to "the probable testimony of any

15  witness who is absent, unavailable, or otherwise not called to

16  testify in this case."  (Motion, 5:11-12).  To the extent Plaintiff

17  understands the relief being sought, she generally agrees.  For

18  example, Plaintiff wants TRW and its replacement experts to be

19  barred from discussing what the late Dr. Brantman would probably

20  have said about airbag deployment if he was still alive.  That

21  being said, if a witness whose deposition has been taken becomes

22  unavailable for trial or is unable to testify, then the parties

23  should be allowed to read from the relevant and admissible portions

24  of the deposition, as the rules provide.  Plaintiff also reserves

25  the right to use deposition testimony for rebuttal and impeachment

26  purposes, whether the person is present at trial or not.

27                              12

28

Edward J. Achrem & Associates
512 South Tonopah Dr., Suite 100 • Las Vegas, Nevada 89106
(702) 734-5036 • Fax (702) 734-7199

10.   Equally Available Evidence.

Again without any context, TRW asks the Court to preclude the Plaintiff from advising the jury, through evidence, testimony, or argument, that TRW "has not identified or offered into evidence as one of its trial exhibits any document or thing equally available to all parties for offering into evidence either through the discovery process or through subpoena."   (Motion, 5:13-16).

Putting aside the fact the Court may likely deny this motion under LR-7(d), TRW needs to clarify the nature and scope of the relief before Plaintiff's position can be finally determined.   If TRW is speaking of documents and things that have been produced in discovery or which may have been otherwise available to become discoverable, then Plaintiff agrees.   However, if TRW wants to preclude Plaintiff from arguing that the failure to produce documents doesn't mean those documents never existed, then Plaintiff disagrees.   For instance, Plaintiff requested all documents TRW had showing any discussions with Chrysler regarding depowering of airbags and the suppression feature.   TRW produced virtually nothing and the only documents that were turned over were to support TRW's self serving explanation that Chrysler was actively involved in the process.   Plaintiff wants to advise the jury that not a single document was ever produced by TRW (or by Chrysler for that matter), which discussed the depowering of airbags, Chrysler's understanding of firing times, and TRW's suppression parameters.

11.   Undisclosed Defect Theories.

13

1   Once again, with no statutory or legal precedent cited in

2   support of this motion, the relief being sought is difficult to

3   address.  On that basis, the Court should deny the motion pursuant

4   to LR-7(d).  Plaintiff would agree, however, that any new defect

5   theories - or defenses - which were not addressed in discovery,

6   tried by express or implied consent, and/or discussed by the

7   parties' proposed experts, should not be allowed.

8   12.   Unidentified Witnesses and Experts.

9   Plaintiff would like to call her child's father and his

10  mother, so that they can discuss their independent observations of

11  Nicole's physical and mental limitations as a new mother.

12  Plaintiff also wishes to call the physicians that treated her for

13  the pregnancy, including her OB/GYN and her Perinatologist, the

14  latter of whom was made necessary as a result of the injuries Ms.

15  Thompson sustained in the collision.  In that regard, the arguments

16  raised in Plaintiff's Third Omnibus Motion in Limine, Doc. No. 189,

17  14:7-16:26, are hereby incorporated by reference.

18  13.   Sending a Message.

19  Plaintiff's attorneys understand their trial obligations and

20  the types of arguments that can be presented to the jury at trial.

21  In that regard, the rulings from Lioce v. Cohen, 124 Nev. 1, 21-22

22  (Nev. 2008) should apply to both sides:

23      "Under Nevada Rule of Professional Conduct (RPC) 3.4(e), an
        attorney shall not state to the jury 'a personal opinion as
24      to the justness of a cause, the credibility of a witness,
        [or] the culpability of a civil litigant.'
25

26      . . .

27      Plaintiffs contend that Emerson impermissibly injected his

28

Edward J. Achrem & Associates
512 South Tonopah Dr., Suite 100  •  Las Vegas, Nevada 89106
(702) 734-3936  •  Fax (702) 734-7109

personal opinion about the justness of their causes when he said that he had 'a real passion for [these] case[s] and cases like [them],' because these were the types of cases that cause people to be distrustful of lawyers and legitimate plaintiffs and lead to what Emerson argued was the public's negative perception of the legal system.

. . .

The comments noted above reflect Emerson's personal opinion about the justness of personal injury litigants' causes and the defendants' culpability. Emerson stated that because of the sheer frivolity of these cases, it was his personal crusade to defend his clients. He also indicated that these types of cases directly contributed to the decline of the public's perception of the legal profession and to the widespread impression that personal injury cases are meritless. By representing to the jury his personal opinion that the plaintiffs' cases were worthless, Emerson not only violated his ethical duties, he also prejudiced the jury against the plaintiffs."

Id, 124 Nev. 1, 21-22 (Nev. 2008).

The balance of TRW's request is too amorphous to be properly addressed at this time (i.e., "any such inflammatory and prejudicial language calculated to have the Jury assess damages on some basis other than proper compensation as provided by the Court's charge to the Jury." [Motion, 5:25-27].  If any relevant issues are raised at the time of trial, those issues can always be addressed outside the jury's presence.

14.  Set the Standards.

While the jury may well be asked to make sure TRW is held accountable for not meeting the standards of consumer safety that Chrysler had set forth in the Owner's Manual, Plaintiff's attorneys will not ask the jurors to use this case to set a national standard for consumer safety, as there are very few 1998 Dodge Neons on the road these days and the technology is totally different.

Edward J. Achtem & Associates
512 South Tonopah Dr., Suite 100 • Las Vegas, Nevada 89106
(702) 734-3956 • Fax (702) 734-7199

15.  "Walk in Plaintiff's Shoes" and "The Golden Rule."

Plaintiff's counsel will comply with the appropriate rules that govern a party's conduct at trial and will expect TRW to do the same.  TRW really didn't have to bring this motion.

16.  Damages Multiplied by Time.

Although Plaintiff's counsel will not disclose how they intend to argue damages, or the methods they will use to obtain the highest jury award their client is entitled to receive, so long as the method for calculating damages is reasonable, it should be allowed.  The case TRW cites to (i.e., Westbrook v. General Tire & Rubber Co., 754 F.2d 1233, (5th Cir. Tex. 1985)), actually provides helpful clarity on this matter and allows this method so long as it's accompanied by an appropriate jury instruction:

> "Breaking down a large time span into its smaller parts of weeks, days or even hours holds a great appeal to a juror looking for a more understandable and manageable way to approach the task of fixing damages. However, this court has found such arguments impermissible because they tend to produce excessive verdicts. Baron Tube Co. v. Transport Insurance Co., 365 F.2d 858 (5th Cir.1966) (en banc); see also, Johnson v. Colglazier, 348 F.2d 420 (5th Cir.1965); Henderson v. S.C. Loveland Co., Inc., 390 F. Supp. 347, 352 (N.D.Fla. 1974). This tendency came to fruition in Charles Westbrook's case.

> In Baron Tube, this court stated: 'The [unit of time] argument cannot be supported by evidence because pain and suffering cannot be measured in dollars on a unit of time basis; that the amount of such damages must necessarily be left, without mathematical formula, to the sound discretion of the jury, because there is no mathematical rule by which the equivalent of such injuries in money can be legally determined; that such arguments create an illusion of certainty in the jury's mind which does not and cannot in fact exist; and that the whole argument is designed and framed to present an appeal to the jurors to put themselves in the plaintiff's shoes.' 365 F.2d at 864.

> **The court went on, however, to recognize that such arguments**

Edward J. Achrem & Associates
512 South Tonopah Dr., Suite 100 • Las Vegas, Nevada 89106
(702) 734-5936 • Fax (702) 734-7199

16

**are 'not improper where accompanied by a suitable cautionary instruction' to protect against an excessive verdict.** Id. The en banc court further emphasized its holding by stating that while a trial judge has much discretion in the means employed to protect against excessive verdicts, a cautionary instruction should have been given to ameliorate the effects of a unit of time argument. 'We hasten to reiterate that these matters, except for requiring a cautionary instruction, are left to the discretion of the trial court.' Id. at 865.

No cautionary instruction was given in this case. Furthermore, General Tire neither objected to the argument nor requested a cautionary instruction. Indeed, it has not raised this error in disputing the excessive verdict on this appeal. Nevertheless, the specific challenge to the amount of the award has directly led us to this error. That the jury awarded precisely the amount of money the formula produced is conclusive evidence that the jury adopted the unit of time formula. Thus, we are convinced that the size of this award is, in part, directly attributable to an uncorrected unit of time argument. This implicates the concerns expressed in Baron Tube."

Id. at 1240; emphasis added.

Accordingly, Plaintiff will request a limiting instruction regarding her hedonic damage claim. See, Banks v. Sunrise Hospital, 120 Nev. 822, 102 P.3d 52 (2004):

"An award for pain and suffering compensates the injured person for the physical discomfort and the emotional response to the sensation of pain caused by the injury itself. Separate damages are given for mental anguish where the evidence shows, for example, that the injured person suffered shock, fright, emotional upset, and/or humiliation as the result of the defendant's negligence.

On the other hand, damages for 'loss of enjoyment of life' compensate for the limitations, resulting from the defendant's negligence, on the injured person's ability to participate in and derive pleasure from the normal activities of daily life, or for the individual's inability to pursue his talents, recreational interests, hobbies, or avocations. (Footnotes omitted.)"

Id, 836, 62.

Plaintiff's economist, Dr. Carroll, has issued reports

Edward J. Achrem & Associates
512 South Tonopah Dr., Suite 100 • Las Vegas, Nevada 89106
(702) 734-3936 • Fax (702) 734-7199

regarding calculating Ms. Thompson's hedonic damages and utilizes the economic principle of opportunity cost to accomplish this, which is consistent with <u>Banks</u>:

> "[M]ethodology for the valuation of hedonic damages assisted the jury to understand the amount of damages that would compensate James for the loss of his enjoyment of life. Johnson's valuation theories were matters within the scope of his specialized knowledge concerning the monetary value of intangibles."

<u>Id</u> at 837-838, 63.

As applied here, Dr. Carroll's analysis is based on the sound, albeit conservative economic principle of assigning a monetary value to Plaintiff's free time. The theory works off the principle that the time she chooses not to earn money has an economic value, which the jury can then use as a starting point to quantify the loss of the quality and enjoyment of life she has suffered as a result of the collision. While this method requires multiplication of damages, it should be allowed and used by the jury as a starting point for the ultimate hedonic damages award.

> "Defendant additionally avers that the jury's award of $500,000 in hedonic damages for disability, disfigurement and loss of enjoyment of life was unsupported by the evidence, excessive, and duplicative of the past and future pain and suffering awards. Defendant argues that hedonic damages are a component of pain and suffering and are not a separate and distinct compensatory award, and that expert testimony is required to support a claim for hedonic damages. **The Court does not agree.**

> Hedonic damages are 'monetary remedies awarded to compensate injured persons for their noneconomic loss of life's pleasures or the loss of enjoyment of life.' <u>Banks ex rel. Banks v. Sunrise Hosp.</u>, 120 Nev. 822, 102 P.3d 52, 61-64 (2004). In <u>Banks</u> the Nevada Supreme Court found that expert testimony is not required, but may be utilized to assist a jury in making its determination of hedonic damages. Additionally, the <u>Banks</u> court found that awards for hedonic

Edward J. Achrem & Associates
512 South Tonopah Dr., Suite 100 • Las Vegas, Nevada 89106
(702) 734-5936 • Fax (702) 734-7199

damages are typically not permitted separate and apart from pain and suffering damages. As in <u>Banks</u> however, the award here was not prejudicial "because the jury could have easily added the value of the hedonic loss to the pain and suffering award.' <u>Banks</u>, 102 P.3d at 64."

<u>Matlock v. Greyhound Lines, Inc.</u>, 2010 U.S. Dist. LEXIS 92359, 6-7 (D. Nev. Aug. 10, 2010) [Emphasis supplied].

Plaintiff will also be submitting a trial brief on the issue of damages when the case is heard. In addition, the jury instructions given by the Court will further assist the jury in deciding how the damages, and the amount should be decided.

17. <u>Plans for Judgment Proceeds.</u>

No legal authority was cited by TRW for this proposition, other than the probative vs. prejudicial argument that has been included in virtually all of its other motions in limine. Once again without revealing how Plaintiff's attorneys intend to ask the jury to award damages, there is no prohibition against discussing how a damage award will likely be utilized if the Plaintiff prevails. Not only is it relevant, but both sides have identified life care planners who will be offering testimony regarding what the Plaintiff will need in the future and the associated costs, including medical personnel, ongoing medical expenses, future surgeries, assistive devices and the like. Since Plaintiff's counsel has had the numbers reduced to present day value, as the law requires, these amounts are appropriate to assist the trier of fact in awarding monetary damages. Plaintiff's doctors will also discuss future medical treatment Ms. Thompson is likely to require due to the collision, which is admissible.

19

The Court should issue an appropriate order that allows Plaintiff to discuss any future damages she may have, as long as they are substantiated by the evidence and the experts' testimony. As for telling the jury how Ms. Thompson plans to use the funds she may be awarded for pain and suffering and the loss of the quality and enjoyment of life, Plaintiff agrees that neither side should be allowed to discuss any plans Plaintiff may have, unless it relates to the mitigation of her damages.

18.   Demand for File Materials.

This motion can't be addressed as it is exceedingly vague, both as to the "files, statements, pleadings, photographs and other documents" TRW is referring to, and the relief its counsel is actually seeking. Since the motion fails to cite to any authority, it should be denied pursuant to LR-7(d).

During discovery, Plaintiff asked TRW to turn over a lot of information, including documents pertaining to the numerous meetings it claims to have had with Chrysler, (both before and after depowered airbags became mandatory) as well as all of the information pertaining to the airbag deployment parameters. The fact that TRW either refused to turn over such information, or admitted it could not do so because it didn't exist, is something the jury should be allowed to consider. If it finds there should have been records to support TRW's claim that Chrysler knew exactly what the algorithm did and how the suppression feature worked, the jury can then infer that the absence of such records constitutes evidence that Chrysler did not understand them.

20

19. Post-Incident Communications.

This is another motion TRW didn't need to file.  Attorney-client and work product privileges are valid, so long as those privileges have not been waived.  Because TRW failed to identify a particular post-incident communication it wanted to be protected, no further response can be given by the Plaintiff at this time.

20. Correspondence from Defense Counsel.

Again, TRW failed to identify the correspondence to which it was referring.  To the extent counsel is being asked to stipulate that all correspondence from Mr. Tippetts should be excluded at trial, Plaintiff declines to do so and opposes this motion, at least to the extent that certain letters may become necessary for rebuttal or impeachment purposes during the trial.  Please also refer to the proposed trial exhibit list, which sets forth the documents and records each side wishes to introduce at trial.

21. Demand for Stipulations.

TRW's generic request for a ruling on unspecified matters, regarding unspecified relief cannot meaningfully be addressed by the Plaintiff.  To the extent any response can be given, Plaintiff generally agrees that demands for on-the-spot stipulations and the like during trial should be made outside the presence of the jury.  However, if TRW's experts bring a "file or briefcase" with them up to the witness stand, Plaintiff's counsel will want to know what they contain before any questioning begins.  As for TRW's oft-repeated probative vs. prejudicial objection, it's inapplicable.

22. TRW's Counsel.

21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

According to their website (i.e., wtllaw.com), Mr. Tippetts' firm is national counsel for TRW and they travel around the country, trying product liability cases over and over, to different juries.   During voir dire, the prospective jurors will be asked about potential bias, including any associations or knowledge they may have with Mr. Tippetts and the various members of his law firm, as well as their knowledge of local counsel Mike Stoberski and the various members of his firm.  Similarly, the jurors will be asked what they know about TRW, whether they know anyone who works there, etc.  Similar questions will also be asked about Nicole's counsel.

There is nothing prejudicial about asking TRW if it has been represented by Mr. Tippetts in other product liability cases and lawsuits, just as there is no prejudice in asking Ms. Thompson about the legal relationship she has with her attorneys, or the number of times she's been involved in prior lawsuits.

23.   Characterizations of TRW's Counsel.

Plaintiff's attorneys won't refer to Mr. Tippetts or TRW's experts as "hired guns," "a traveling road show" or "circus," "a dog and pony show," or other similar derogatory remarks.  They will also assume Mr. Tippetts will refrain from making similar comments about them or their experts, such as the comment he made to this Court during the last hearing, to the effect that the Plaintiff would have sued TRW even if her airbag had deployed.

24.   TRW's Attorney Fees.

First, the relief being sought isn't clear.  Is TRW asking the Court to prevent Plaintiff's lawyers from ever being allowed to

22

discuss TRW's attorney fees, or from discussing the costs and fees Plaintiff has incurred in this case? Obviously, if she prevails, Plaintiff will be seeking to recover taxable costs, interest, expert and related fees. If TRW doesn't want the parties telling the jury how much money they've spent in getting the case to trial, then Plaintiff agrees. Beyond that, Plaintiff objects.

25. Insurance.

To the extent TRW wants evidence of insurance (including collateral source payments) to be excluded, Plaintiff agrees.[4] However, if TRW is attempting to prevent counsel from asking TRW's witnesses how many times they have testified on the Defendant's behalf in other cases, Plaintiff disagrees. For example, the fact that both of TRW's airbag experts happen to be former employees is relevant to show bias and the probative value substantially outweighs any prejudicial effect. FRE 403.

26. Settlement Talks.

Based on the extraordinarily low settlement offer TRW made during the recent Court-ordered settlement conference with Magistrate Judge Ferenbach (who subsequently recused himself), Plaintiff fully understands this case needs to be tried. Plaintiff also agrees that any reference to settlement discussions has no probative value and is specifically barred by law. Since TRW rarely settles cases of this magnitude anyway, there will be no "TRW settled that case" (Motion, 8:25) discussions during the

---

4 *Please also refer to Plaintiff's First Omnibus Motion in Limine, Doc. No. 183, 23:19-24:16.*

Edward J. Achrem & Associates
512 South Tonopah Dr., Suite 100 • Las Vegas, Nevada 89106
(702) 734-5956 • Fax (702) 734-7199

1   trial.   Please also refer to Plaintiff's First Omnibus Motion in

2   Limine, Doc. No. 183, 22:19-23:13.

3   27.   Other Product Liability Lawsuits.

4       This motion is also vague.   Although TRW refers to various

5   lawsuits that have been tried, it fails to connect the relief it

6   seeks against the specifics of those cases.   If TRW is asking the

7   Court to issue an order that prohibits Plaintiff from discussing

8   the relevance and necessity of product liability cases in general

9   and how such cases can lead to safer products and greater

10  protection to consumers at large, then Plaintiff clearly objects.

11  What Plaintiff won't do, however, is discuss the actual amounts of

12  the huge verdicts that were obtained in many of the cases TRW cites

13  in its motion, and then ask the jury to issue a similar award in

14  this case - because such an award was issued in the others.

15      Plaintiff is confident that the jury will appreciate the

16  extraordinary nature of Ms. Thompson's permanent damages and issue

17  an award that will fairly compensate her for those injuries, cover

18  her future medical treatment, and send a further financial message

19  to TRW if the jury also awards punitive damages in this case.

20  28.   Media Reports.

21      Unless TRW can identify the media reports it's worried about,

22  there isn't much the Plaintiff can respond to at this time.   While

23  Plaintiff cannot prevent the press from covering this particular

24  trial if it's deemed to be newsworthy, she has no intention of

25  talking about other TRW product defects that may be out there.

26  29.   TRW's State of Mind.

27

28                                  24

This category is also difficult to understand, both in terms of the relief TRW is seeking, and the ruling the Court is being asked to make. A person who is otherwise qualified does not need to be a former TRW employee in order to interpret documents and to give testimony as to what he or she believes TRW knew, or intended. For example, even though Plaintiff's airbag expert never worked for TRW, he has strong opinions about what TRW knew, or should have known, at the time it created the secret algorithm that controlled the AECM unit in Nicole's vehicle. The fact that Mr. Caruso wasn't a TRW employee also won't prevent him from telling the jury that it's inconceivable TRW wasn't fully aware of the representations that were being made by Chrysler in the Owner's Manual – so TRW could immediately warn the auto manufacturer that misstatements were being made as to when and how the airbags would deploy. Without more clarification, however, the motion should be denied.

30. Persons in Courtroom.

In its one sentence motion, TRW asks the Court to prohibit counsel from making any reference "to persons present or not present in the courtroom" (Motion, 9:22) during the trial. Once again, it's difficult to understand what relief TRW is asking for, or how TRW believes it would be harmed if references were made to people who were present at trial. Since Plaintiff intends to invoke the exclusionary rule, the only persons who will be inside the courtroom, other than the parties, will be the testifying witness and casual observers.

31. Deposition Objections.

25

After reading the motion several times, it can't be determined if TRW is seeking to preclude objections from being read into the record when depositions are being quoted, or if TRW wants those objections to be read into the record. Since TRW also failed to identify any of the applicable deposition excerpts, Plaintiff's only response is that the Court will need to address these matters if/when the parties actually try to introduce otherwise relevant deposition testimony that contains objections. However, Plaintiff does agree these rulings should be outside the jury's presence.

32. The Effect of the Jury's Answers.

Without an example of what TRW is referring to in this motion, no meaningful response can be given. This Court is going to instruct and inform the jury about its responsibilities and what the jury instructions mean. As for the trial judge or appellate court reducing the jury's verdict, Plaintiff doesn't understand the relief being sought, or what the Court is being asked to do.

33. Reducing/Raising Jury Award.

Plaintiff agrees both sides should not be allowed to discuss additur and remittitur, or what Your Honor can, and cannot do or say during the trial, as they're outside the attorneys' authority.

34. Motion Practice.

Plaintiff agrees the failure of TRW to file a motion – even the summary judgment motion TRW promised Judge Pro on the component part defense two years ago, is not relevant as far as the jury is concerned. Since Judge Pro also denied TRW's motion to strike Plaintiff's punitive damage and back-related claims, Plaintiff

Edward J. Achrem & Associates
512 South Tonopah Dr., Suite 100 • Las Vegas, Nevada 89106
(702) 734-3936 • Fax (702) 734-7199

won't bring these rulings up either, at least not directly. Plaintiff requests that TRW also be similarly prohibited.

35. <u>This Motion.</u>

Once this Court has issued its rulings on the parties' motions, there will be no need to discuss Your Honor's rulings with the jury. That being said, the rulings themselves will dictate what matters can and cannot be raised by the parties.

## CONCLUSION

For all the above reasons, Plaintiff requests the Court to deny Defendant's Motion Nos. 1, 2, 3, 5, 6, 7,[5] 8, 10, 16, 18, 20, 29 and 32 and that the Court also issue appropriate orders on all other matters.

DATED this <u>30th</u> day of October, 2013

EDWARD J. ACHREM & ASSOCIATES, LTD.

EDWARD J. ACHREM, ESQ.
Nevada Bar No. 2281
(702) 734-3936
Counsel for Plaintiff

docs\lgl\thompson.rs6

---

[5]    *If Plaintiff's Seatbelt Motion in Limine is granted (Doc. No. 167) then Motions 6 and 7 will become moot.*