1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                                **DISTRICT OF NEVADA**

10

11   Nicole Thompson, et al.,                         Case No.: 2:09-cv-1375-JAD-PAL

12            Plaintiffs,

13            v.                                        **Order Denying Plaintiff's Motion in**
                                                        **Limine to Preclude any Testimony,**
14   Autoliv Safety Technology, Inc., et al.,           **Evidence or Argument During Trial**
                                                        **Regarding Plaintiff's Seatbelt Use**
15            Defendants.                                          **[Doc. 167]**

16

17

18          This is a product-liability crashworthiness case.  Doc. 33.[1]  Plaintiff Nicole Thompson

19   generally alleges that on April 27, 2007, she was driving a 1998 Dodge Neon in Las Vegas,

20   Nevada, when another vehicle swerved into her lane and struck the side of her car.  *Id.* at 4.

21   The force of the collision caused Thompson's vehicle to veer off of the road, where it first

22   struck the curb and then a large power pole "virtually head on" at approximately 27 miles per

23   hour.  *Id.*  The driver- and passenger-side airbags in Thompson's car did not deploy, and

24   Thompson suffered personal injuries.  *Id.*

25          Thompson sued airbag manufacturer Defendant TRW Automotive US LLC ("TRW")

26

27
            [1]Thompson originally filed this suit in Nevada State Court on April 24, 2009.  (R. Doc. 1-2).  The matter
28   was then duly removed to federal court on July 29, 2009.  (R. Doc. 1).  Thompson then amended her Complaint
     on March 9, 2010.  (R. Doc. 33).  The Court sits in diversity pursuant to 28 U.S.C. § 1332.

1   and seatbelt manufacturers Autoliv Safety Technology, Inc., and Autoliv ASP, Inc.

2   (collectively, "Autoliv") for negligence, gross negligence, negligence per se, and product

3   defects, theorizing that the seatbelt and airbag systems were defective, fell below industry

4   standards, and proximately caused her "massive, life-threatening, and permanent injuries."

5   *See generally id.*  She settled the seatbelt claims and dismissed Autoliv in 2011.  Docs. 74,

6   78, 79.  On April 19, 2011, Thompson filed an initial motion in limine to exclude any

7   reference to seatbelts.  Doc. 88.  Judge Philip Pro[2] heard that motion on August 1, 2011, and

8   denied it "without prejudice to renew the argument at the time of trial in the context of the

9   evidentiary presentation or anything else that you all develop between now and the time of

10  trial."  Doc. 112, p. 32.[3]

11      Thompson now renews that motion (Doc. 167) to exclude all seatbelt references at

12  trial.  She contends that Nevada Revised Statute § 484D.495 bars seatbelt evidence from trial

13  and that her settlement with Autoliv "eliminated any claims TRW could ever assert regarding

14  the seatbelt."  Doc. 167 at 12.  She further argues that whether or not she was wearing a

15  seatbelt is irrelevant to the question of whether the airbag system operated properly because

16  the system was designed without regard to seatbelt use and, thus, introduction of seatbelt

17  evidence would be more prejudicial than probative and must be excluded under Federal Rule

18  of Evidence 403.  As this Court does not interpret § 484D.495 or § 17.245 to preclude all

19  seatbelt-use evidence from this crashworthiness case and finds that the Plaintiff's own

20  experts have made seatbelt evidence centrally relevant in this case and TRW's defense relies

21  heavily upon it, the Court denies the motion but leaves open Plaintiff's ability to move the

22  Court for a jury instruction limiting the use of the seatbelt evidence.

23

24

25          [2] This case was reassigned to the undersigned on August 6, 2013.  Doc. 163.

26          [3] TRW overstates the effect of Judge Pro's ruling as "the law of the case."  Doc. 170 at 3.  Judge Pro left
    open—and invited reargument—on this issue, thus his ruling was not intended to be final so as to trigger the law
27  of the case doctrine.  *See United States v. Valmer*, 245 F. App'x 720, 726 & n.8 (9th Cir. 2007) (unpublished)
    (noting that the Ninth Circuit characterizes application of the doctrine to denials without prejudice as a
28  "mistake").

1

2

**Discussion**

**A.    NEV. REV. STAT. ANN. § 484D.495 Does Not Bar Seatbelt-Use Evidence in this**
3      **Crashworthiness Case.**

4          Thompson contends that § 484D.495 "is extremely clear": "the failure to wear a

5   seatbelt may not be considered as negligence, misuse or abuse of a product, or as causation in

6   a product defect action."  Doc. 167 at 7.  This Court disagrees with Thompson's broad

7   reading of this statute and believes that the Nevada Supreme Court would, too.

8          NEV. REV. STAT. ANN. § 484D.495 requires most vehicle occupants to wear a seatbelt

9   and states:

10          4.    A violation of subsection 2:

11                (B)    May not be considered as negligence or as causation in
                        any civil action or as negligent or reckless driving under
12                      NRS 484B.653.

13                (C)    May not be considered as misuse or abuse of a product or
                        as causation in any action brought to recover damages for
14                      injury to a person or property resulting from the
                        manufacture, distribution, sale or use of a product.

15

16  *Id.* at § 484D.495(4).[4]  The Nevada Supreme Court recently addressed this statute in

17  *Bayerische Motoren Werke Aktingesellschaft v. Roth*, 252 P.3d 649 (Nev. 2011).  Although

18  the Court did not "resolve" its scope and application, the *Roth* discussion is illuminative and

19  certainly suggests that the Nevada Supreme Court would interpret § 484D.495(4) to preclude

20  only evidence of a violation of § 484D.495(2), not the evidence of seatbelt use itself.[5]  After

21  examining the "variety of forms" that seatbelt statutes take across the country, the *Roth* court

22

23          [4] Whether this statute is presently effective is made contingent on certain provisions in federal
24  regulations: "Sections 1 and 2 of this act expire by limitation on the date on which the Secretary of the United
    States Department of Transportation, or his authorized representative, rescinds that portion of the Federal Motor
25  Vehicle Safety Standard No. 208 (49 C.F.R. § 571.208) which requires the installation of automatic restrains in
    private passenger motor vehicles." *See id.*  At the time of filing this opinion, these sections of Standard No. 208
26  remain in effect.

27          [5] When interpreting state law, federal courts "will follow a state supreme court's interpretation of its own
    statute in the absence of extraordinary circumstances." *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 (9th
28  Cir. 1986).  Where no binding precedent exists from the state's highest court, a federal court must predict how
    that court would decide the issue. *In re Kekauoha-Alisa*, 674 F.3d 1083, 1087-88 (9th Cir. 2012).

1  noted that although Nevada's statute "addresses causation, in addition to negligence and

2  abuse or misuse of product," the law:

> does not say that "evidence of failure to wear a seat belt shall not be admissible" in any proceeding.  Rather, NRS 484D.495(4)(b) and (c) say that "[a] violation of section 2" (the vehicle code provision requiring adults to wear seatbelts when riding in cars) "[m]ay not be considered as negligence or . . . as misuse or abuse of a product or as causation" in any civil action.  **This wording suggests that NRS 484D.495(4)(b) and (c) only bar evidence in a civil action that a party's conduct constituted a statutory violation of law**, not evidence of the underlying conduct.

8  *Roth*, 252 P.3d at 660 (internal citation and quotation omitted) (emphasis added).  "This

9  would prevent use of the seatbelt statute to establish duty or fault but not the admissibility of

10  the underlying fact the seatbelt was not being worn." *Id*.  To interpret § 484D.495(4) to

11  preclude only evidence and argument that a party's *violation* of the seatbelt law constitutes

12  negligence or product misuse is consistent with other jurisdictions that have interpreted

13  similarly worded seatbelt laws.  *See e.g. Brown v. Ford Motor Co.*, 10 F. App'x 39, 42 (4th

14  Cir. 2001) (unpublished) (interpreting Virginia law barring evidence of "a violation" of the

15  seatbelt law to be "most appropriately understood as forbidding only the admission into

16  evidence or comment upon such an official determination that the section was violated, and

17  at most as forbidding admission of or comment upon evidence that would be sufficient to

18  establish all of the elements of a violation of the section.").[6]

19      Even if this Court were to ignore the language in § 484D.495 that "a violation of

20  section 2" is inadmissible for the purposes stated in that provision and read the law to bar

21  instead "evidence of seatbelt nonuse,"[7] *Roth* suggests that the Nevada Supreme Court would

22  not find that bar applicable in this crashworthiness case.  As the Court explained, seatbelt

23  nonuse is admissible in safety restraint cases like this one where evidence of seatbelt nonuse

24  is relevant to rebut causation:

25

26      [6] The Georgia statute in *Denton v. Daimlerchrysler*, 645 F. Supp. 2d 1215 (N.D. Ga. 2009), which Plaintiff relies upon, is distinguishable because it barred evidence of seatbelt nonuse, not a violation of the seatbelt law.

28      [7] *Holiday Ret. Corp. v. State, DIR*, 274 P.3d 759, 761 (Nev. 2012) (noting that it is the "prerogative of the Legislature," not the courts, "to change or rewrite a statute").

> It is one thing to exclude seatbelt evidence and argument in a suit alleging that the accident itself - and therefore the injuries flowing from that accident - were caused by a defect in the automobile.  It is another thing to exclude such evidence and argument in a crashworthiness case, where evidence that an automobile was equipped with seatbelts is generally admitted to defend the overall design of the safety restrain system and to defend against the claim that the defect in the safety restraint system was the cause-in-fact of the plaintiff[']s enhanced injures, for which liability would otherwise attach.  Thus, "in secondary-collision product-liability action," seatbelt nonuse may necessarily "be admissible to show, *or, as in this action, rebut*, the essential element of causation."

*Roth*, 252 P.3d at 660 (quoting *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 202 (5th Cir. 2006)) (internal citations omitted) (emphasis original).  The *Roth* court further observed, "once a plaintiff makes an affirmative claim that a vehicle's safety restraint system was used and failed, court-imposed limits on a manufacturer's ability to rebut such claims with proof that an integral part of the safety restraint system—the seatbelts—were not used will rarely, if ever, be appropriate." *Id*. at 660 n.8.  Plaintiff plainly makes an affirmative claim that her vehicle's safety restraint system—including both the seatbelt and airbag components—was used and failed. *See* Doc. 33.  This Court will not interpret or apply § 484D.495(4) to impose limits on TRW's ability to rebut those claims with seatbelt nonuse evidence.

**B.      NEV. REV. STAT. ANN. § 17.245 Does Not Require the Exclusion of Seatbelt Evidence or Argument.**

Plaintiff also suggests that the Court's approval of her good-faith settlement with Autoliv, the seatbelt-manufacturer defendant, prevents TRW from asserting a seatbelt-based defense because "Ms. Thompson's defective seatbelt claim ceased to exist, as a matter of law." Doc. 167 at 12, n.3 & 13.  In essence, Plaintiff contends that, by settling with the seatbelt manufacturer, nobody can ever utter the word "seatbelt" again in this case.  Plaintiff offers no authority for this proposition, and this Court finds none.[8]

---

[8] The Nevada Supreme Court has held that "NRS 17.245 does not prevent a defendant from pointing the blame at another defendant or from arguing that it was not responsible for the plaintiff's injury." *Banks ex rel. Banks v. Sunrise Hosp.*, 102 P.3d 52, 67 (Nev. 2004) (holding that remaining defendant "was free to argue that [settling defendant's] negligence proximately caused [the plaintiff's] injury, rather than the [remaining defendant's] equipment malfunction."). If NEV. REV. STAT. ANN. § 17.245 does not bar non-settling defendants from empty chairing settling defendants, it is unlikely that the Nevada Supreme Court would interpret it to bar TRW's seatbelt defense in this case.

**C.      The Seatbelt Evidence Is Not Excludable Under FED. R. EVID. 403.**

Finally, Plaintiff contends that the seatbelt-use evidence should be excluded under FED. R. EVID. 403 so Plaintiff's counsel and the jury can "focus instead" on the real issue—"whether TRW's airbag system was defective and whether TRW had failed to warn."[9] Doc. 167 at 14-15.  The seatbelt evidence is not just probative of that issue, it is central to it, as a result of both parties' claims, defenses, and theories.

In her Amended Complaint, plaintiff alleges that the seatbelt and airbag systems in her car were defective and their failure to function properly "contributed to" and "caused and/or contributed to" her injuries and damages, respectively.  *See e.g.* Doc. 33 at ¶¶ 18; 38.  Her automotive safety system expert's opinion begins with the assertion that "Miss Thompson was properly seat belted during this accident, but when the vehicle impacted the utility pole at this high level of severity, the frontal impact airbags failed to deply.  Additionally, the seatbelt inertial latching mechanism failed to actuate properly, as a result, the seatbelt alone did not provide sufficient restraint and this caused Miss Thompson to impact the interior of the vehicle with sufficient force to cause injuries to her knees, face, and head as a result." Doc. 95-2 at 1.  And Thompson's biomechanical expert opines that "Both of the primary restraint systems failed at the same time: the airbags did not deploy . . . and the driver's seatbelt restraint apparently malfunctioned," and "[t]he failure of the restraint systems is the dominant factor" in her carotid artery injury.  Doc. 95-3 at 9.  "This supports the proposition that properly functioning depowered airbag and/or seatbelt restraint systems would have prevented Nicole Thompson's carotid artery injury and stroke." *Id*.

The allegation that Thompson was not seatbelted at the time of the crash is a crux of TRW's defense.  TRW contends that the airbag's failure to deploy was not a defect but a design feature: it did not deploy because Thompson was not seatbelted and the system is

---

[9] Key to Plaintiff's analysis of this issue is her categorical assertion that "there is universal agreement by both sides' experts that whether [she] was . . . wearing her seatbelt had no correlation or effect on the Airbag system's decision to suppress both front airbags when her vehicle struck the power pole," and "nothing in the [airbag system] considers seatbelt use." Doc. 167 at 5.  This characterization is belied by even a cursory reading of TRW's expert reports. *See* Docs. 95-4 at 15; 95-5 at 4.

1   designed not to deploy if the driver's lack of seatbelt may have caused her body to move out

2   of position to prevent greater injury.  *See* Doc. 95-4 at 15.  TRW's expert opines that Plaintiff

3   was not seatbelted, her body had moved out of position as a result of being unrestrained, and

4   had she been belted, "her risk of severe injury . . . would have been significantly reduced or

5   eliminated."  *Id*.  Thus, the seatbelt evidence is paramount to *both* Plaintiff's and TRW's case

6   theories.

7            Plaintiff has not persuaded this Court that it should prevent TRW from putting on this

8   defense due to unfair prejudice, risk of confusing the issues, misleading the jury, undue

9   delay, wasting time, or needlessly presenting cumulative evidence.  Plaintiff points out that

10  allowing TRW to put on this evidence will probably result in a longer trial than if TRW were

11  deprived of the right to put on this defense, but that is true of any defense or theory and

12  cannot be the touchstone for exclusion decisions.  And as the *Roth* court noted, in a

13  crashworthiness case, seatbelt evidence and argument "is generally admitted to defend the

14  overall design of the safety restraint system and to defend against the claim that the defect in

15  the safety restraint system was the cause-in-fact of the plaintiff[']s enhanced injuries, for

16  which liability would not otherwise attach."  *Roth*, 252 P.3d at 660.  As plaintiff has made

17  "an affirmative claim that [her] vehicle's safety restraint system was used and failed, court-

18  imposed limits on a manufacturer's ability to rebut such claims with proof that an integral

19  part of the safety restraint system—the seatbelts—were not used will rarely, if ever, be

20  appropriate."  *Id*. at n.8.  Plaintiff has not demonstrated that this is the rare case in which

21  those limits are appropriate.

22  **D.    Limiting Instruction**

23           Plaintiff suggests an instruction for this Court to provide in the event it grants this

24  motion, but she offers none in the event of its denial.  *See* Doc. 167, p. 13.  The Court

25  recognizes that some limiting instruction may be appropriate in light of the language and

26  scope of § 484D.495 and the nature of the claims in this case.  However, as the parties did

27  specifically propose such a limiting instruction, the Court reserves any ruling on an

28  appropriate limiting instruction until a proper motion has been brought at (or near) trial.

1

**Conclusion**

2    Accordingly, it is **HEREBY ORDERED** that Plaintiff's Motion in Limine to

3  Preclude Any Testimony, Evidence, or Argument Regarding Plaintiff's Seatbelt Use **[Doc.**

4  **167] is DENIED.**

5    DATED:  November 19, 2013

6                                                            _____
                                                             JENNIFER A. DORSEY
7                                                            UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28