1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

8
9

| | |
|---|---|
| Nicole Thompson, | Case No.: 2:09-cv-1375-JAD-PAL |
| Plaintiff, | |
| v. | **Omnibus Order on Motions in Limine [Docs. 183, 184, 185, 186, 187, 188, 189, 190], and Motion for Leave to File Supplement [Doc. 213]** |
| TRW Automotive, Inc., | |
| Defendant. | |

15      This is a product-liability crashworthiness case.  Doc. 33.[1]  Plaintiff Nicole Thompson

generally alleges that on April 27, 2007, she was driving a 1998 Dodge Neon in Las Vegas, Nevada,

when another vehicle swerved into her lane and struck the side of her car.  *Id.* at 4.  The force of the

collision caused Thompson's vehicle to veer off of the road, where it first struck the curb and then a

large power pole "virtually head on" at approximately 27 miles per hour.  *Id.*  The driver- and

passenger-side airbags in Thompson's car did not deploy, and Thompson suffered personal injuries.

*Id.*

      Thompson sued airbag-system designer and manufacturer TRW Automotive US LLC

("TRW") and seatbelt manufacturers Autoliv Safety Technology, Inc., and Autoliv ASP, Inc.

(collectively, "Autoliv") for negligence, gross negligence, negligence per se, and product defects,

theorizing that the seatbelt and airbag systems were defective, fell below industry standards, and

---

[1]      Thompson originally filed this suit in Nevada State Court on April 24, 2009.  Doc. 1-2.  The matter was then duly removed to federal court on July 29, 2009.  Doc. 1.  Thompson then amended her Complaint on March 9, 2010.  Doc. 33.  The Court sits in diversity pursuant to 28 U.S.C. § 1332.

proximately caused her "massive, life-threatening, and permanent injuries." *See generally id.* She settled the seatbelt claims and dismissed all claims against Autoliv in 2011, Docs. 74, 78, 79, leaving TRW as the only remaining defendant.

In anticipation of trial, Plaintiff and TRW have filed motions in limine seeking dozens of evidentiary rulings.[2]  Finding that all of these motions can be resolved without oral argument in accordance with Local Rule 78-2, the Court considers each of the motions herein.

**Discussion**

**A.     Motions in Limine**

Although the Federal Rules of Evidence do not explicitly authorize motions in limine, the trial courts' general authority to manage trials permits trial judges to rule on evidentiary issues before the start of trial.[3]  Pretrial consideration of evidentiary issues serves to avoid the futile attempt of "unring[ing] the bell" when jurors have seen or heard inadmissible evidence, even when stricken from the record.[4]  Motions in limine may also save expensive trial time because ruling on evidentiary disputes in advance minimizes side-bar conferences and other disruptions at trial, and potentially obviates the need to call certain witnesses.[5]

These policy considerations must be weighed against the loss of the court's ability to

---

[2]     Thompson's First Omnibus Motion in Limine to Exclude Evidence, Testimony and Arguments of Defense Counsel,  Doc. 183; Thompson's Second Omnibus Motion in Limine to Exclude Evidence, Testimony and  Arguments of Defense Counsel, Doc. 184; TRW's Motion in Limine, Doc. 185; Thompson's Motion in Limine to Preclude the Defendant and/or its Experts to Testify or Submit Evidence or Argument at Trial That the AECM in Plaintiff's Vehicle Was "State of the Art," Doc. 186; Thompson's Motion in Limine to Preclude Any Testimony, Evidence or Argument During Trial Regarding TRW's AECM/Algorithm Protection Against Injury Due to Deployment of Air Bags with out of Position Occupants, Doc. 187; Thompson's Motion in Limine to Preclude Any Testimony, Evidence or Argument During Trial Regarding TRW Testing its AECM/Algorithm Against Concatenated Events, Doc. 188; Thompson's Third Omnibus Motion in Limine to Exclude Evidence, Testimony and Arguments of Defense Counsel, Doc. 189; Thompson's Fourth Omnibus Motion in Limine to Exclude Evidence, Testimony and  Arguments of Defense Counsel, Doc. 190.  Subsequently, Thompson filed a motion for leave to file supplemental authority into the record in support of Doc. 184, Doc. 213.

[3]     *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984).

[4]     *Brodit v. Cambra*, 350 F.3d 985, 1004-05 (9th Cir. 2003) (quotations and citations omitted).

[5]      *See United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002).

consider evidence in the context of the trial when the court is "better situated . . . to assess the value and utility of evidence."[6]  Limine rulings are provisional; they are "not binding on the trial judge [who] may always change [her] mind during the course of a trial."[7]  "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted to trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded."[8]  With these principles in mind, the Court addresses these motions in limine in turn.

**B.     Plaintiff's First Omnibus Motions in Limine (Doc. 183)**

### 1.      Thompson's Parents' Unsuccessful Claims

Thompson first notes that her parents, Shirley and Dennis, originally filed intentional infliction of emotional distress claims in this suit after witnessing their daughter suffer a massive stroke in front of them.  Doc. 33 at 14-16.  Their claims were dismissed on summary judgment. Docs. 48, 183 at 2.  Thompson asks the Court to preclude any evidence of those failed claims under Rules 401, 402, and 403, and TRW represents that it has no intention of introducing evidence of Thompson's parents' lawsuit and prior claims, and that it will approach the bench if it changes its mind at trial.  Doc. 205 at 2.  TRW's response leaves no controversy in this regard for the Court to resolve.  Accordingly, the motion in this regard is denied without prejudice.

### 2.      Plaintiff's Autoliv Claims and Settlement

Plaintiff's Amended Complaint alleges that Autoliv—the manufacturer of the seatbelt in Plaintiff's vehicle—is also responsible for her injuries.  Doc. 33 at 3-10.  Plaintiff settled with Autoliv for an undisclosed amount, and she asks the Court to "exclud[e] any reference (i) to"

---

[6]     *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007); *accord Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975) ("A better practice is to deal with questions of admissibility of evidence as they arise.").

[7]     *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *accord Luce*, 469 U.S. at 41 (noting that in limine rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner).

[8]     *Tracey v. Am. Family Mut. Ins. Co.*, 2010 WL 3724896, at *2 (D. Nev. Sept. 17, 2010) (quoting *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004)).

1    Autoliv, "(ii) to the previous state court actions, or (iii) to any settlements" with the Plaintiff.  Doc.

2    183 at 22-23.  TRW responds that it has no intention of introducing evidence of the Autoliv

3    settlement and its amount, but Autoliv's role in Plaintiff's injuries remains fair game.  Doc. 205 at 3-

4    4.  Indeed, this Court has previously rejected Plaintiff's argument that the approval of her good-faith

5    settlement with Autoliv prevents TRW from pointing the finger at Autoliv and its seatbelt design.

6    *See* Doc. 208 at 5-8.  Evidence of any settlement and its amount are plainly inadmissible.[9]

7    However, as the Nevada Supreme Court explained in *Banks*, this defendant may attempt to establish

8    that "the entire responsibility" for Thompson's "injuries rests with nonparties, including those" like

9    Autoliv, "who have separately settled their liabilities with the plaintiff."[10]  TRW must do so without

10   referencing Autoliv's settlement or its amount.  Accordingly, this motion is granted in part.

11           **3.      Collateral Source Evidence**

12           Thompson argues that although TRW has already agreed to redact all insurance information

13   from medical records it will likely introduce at trial, "out of an abundance of caution" she requests a

14   formal order that the collateral source rule will be applied in this case.  Doc. 183 at 23.  Specifically,

15   Thompson points to TRW's proposed exhibits 548, 551, and 553.  *Id.* at 24.  In response, TRW

16   argues that it does not intend to introduce evidence that TRW was or was not insured, and promises

17   to approach the bench before attempting to introduce Exhibits 548, 551, and 553 in any event.  Doc.

18   205 at 5.

19           Under Federal Rule of Evidence 411, "Evidence that a person was or was not insured against

20   liability is not admissible to prove whether the person acted negligently or otherwise wrongfully.

21   But the court may admit this evidence for another purpose, such as proving a witness's bias or

22   prejudice or proving agency, ownership, or control."[11]  It appears that the collateral source issue has

23   been resolved by agreement of the parties as to the three exhibits identified in this motion, and any

24   _____

25       [9]      *See* Fed. R. Evid. 408; *Banks v. Sunrise Hospital*, 102 P.2d 52, 67 (Nev. 2004) ("in order to
26   prevent improper speculation by the jury, the parties may not inform the jury as to either the existence of
     a settlement or the sum paid.").

27       [10]      *Banks*, 102 P.3d at 67.

28       [11]      Fed. R. Evid. 411.

1    further application of this rule is best reserved for trial when the Court will have greater context.

2    Thompson's motion in limine in this regard is denied as moot.

3           **4.      Thompson's Chrysler Lawsuit**

4           Thompson next notes that she sued the vehicle's manufacturer, Chrysler, in Nevada state

5    court, and that separate lawsuit was stayed due to Chrysler's bankruptcy filing.  Doc. 183 at 24.  She

6    contends that no evidence of that lawsuit should be introduced at this trial because Chrysler is not a

7    party to this lawsuit,[12] and TRW should not be permitted to use an empty-chair defense against

8    Chrysler because its bankruptcy precludes Plaintiff from every recovering against the car

9    manufacturer.  TRW cites to the Nevada Supreme Court's decision in *Banks v. Sunrise Hospital* for

10   the proposition that it has the unfettered right to blame Chrysler for Plaintiff's injuries, and when

11   Plaintiff's own approach to this case has been to blame Chrysler, Autoliv (the now-settled-out

12   seatbelt manufacturer), and TRW, her allegations against those other parties are now judicial

13   admissions that she and her experts cannot avoid.  Doc. 205 at 6-8.

14          TRW's reliance on *Banks* is misplaced.  *Banks* interprets and applies two Nevada statutes

15   that have no application in this Chrysler discussion: NRS § 17.245, which provides the effect of a

16   release or a covenant not to sue against a joint tortfeasor (there is no evidence that plaintiff gave

17   Chrysler a release or covenant), and NRS § 41.141, Nevada's comparative negligence statute (which

18   has no relevance to a third-party liability argument or in a strict- or products-liability suit such as

19   this one).[13]  *Banks* does not address the admissibility of claims asserted in a separate lawsuit against

20   a co-tortfeasor.  It does suggest, however, that when a plaintiff is proceeding against "an additional

21   tortfeasor," the court has an obligation "to prevent improper speculation by the jury" and thus should

22   place limitations on the information about any empty chair defendant.[14]

23

24          The difficulty with Plaintiff's argument that her allegations against Chrysler should be

25

26   [12]       Inconsistently, in Document 190 Plaintiff seeks preadmission of documents obtained in that
             Chrysler litigation.  *See* Doc. 190.

27   [13]       *See Banks*, 120 P.3d at 67-68.

28   [14]       *Id*. at 67.

subject to a blanket exclusion is that Plaintiff, herself, gives Chrysler an active role in her allegations against TRW in this case.  She contends "that Chrysler could not reasonably have been expected to understand how TRW's suppression feature would work and under what circumstances the airbags would be suppressed," that TRW failed to disclose key information to Chrysler, "that TRW should have immediately realized"—based on the "misrepresentations" in Chrysler's owner's manual—that "Chrysler didn't understand" how its airbag system would function in a frontal collision, and that TRW never asked Chrysler to correct those misrepresentations.  Doc. 183 at 8.  She argues in this motion that "one of the central issues to be decided in the case will be whether or not this was a condition requiring warning and whether or not TRW had failed to warn the public." *Id*. at 28.  When Plaintiff has given Chrysler such an active role in her allegations against TRW, she cannot seriously argue that TRW should not be permitted to introduce evidence of Chrysler's roles and responsibilities with respect to the vehicle's components relevant to her own claims and theories or place the blame for those allegations on Chrysler.[15]

But TRW can offer evidence of Chrysler's roles and responsibilities without referencing Plaintiff's lawsuit against Chrysler—which this Court finds has a risk of confusing the jury and should therefore be excluded.  This case and TRW's defenses can be fully addressed and presented without mentioning that Plaintiff filed a lawsuit against Chrysler or what the outcome (or non-outcome) of that lawsuit was.  Just as the *Banks* court found that settlement details with co-defendants should be excluded "to prevent improper speculation by the jury,"[16] this Court concludes that evidence that Plaintiff filed a lawsuit against Chrysler is more prejudicial than probative of any fact at issue in this litigation because it risks confusion of the issues.  Therefore, this request is granted in part; evidence that Plaintiff filed a lawsuit against Chrysler will be excluded from trial under FRE 403.

---

[15]     Plaintiff has not sufficiently demonstrated that TRW would have no legal basis for an empty-chair defense, and by this ruling, the Court does not opine on the sufficiency of the evidence for that defense theory.  At this point pretrial, and without additional context, the Court is simply not in a position to conclude on an *in limine* basis that TRW could not offer such a defense.

[16]     120 P.3d at 67.

**C.      Thompson's Second Omnibus Motion in Limine to Exclude Evidence, Testimony and Arguments of Defense Counsel (Doc. 184)**

**1.      Sled Testing Evidence**

Plaintiff's expert Charles Benedict opines that the seatbelt retractor in Plaintiff's vehicle "failed to lock during the accident" and the airbag system was defective, and "but for" either of these defects, Plaintiff "would not have experienced hyperextension of her head and neck." Doc. 205-1 at 4-5.  He relies, in part, on his conclusion that "[t]here was stress evidence on the driver's side restraint webbing with significant abrasions, puckering and creasing" that "correlate with the latch plate location when the restraint is worn by" the Plaintiff.  *Id*. at 3.  TRW's seatbelt expert Michael Klima rebuts Benedict's opinions.  He relies, in part, on sled testing performed using a crash test dummy to test the seatbelt impact allegations Benedict relied on in forming his opinions. *See* Doc. 205-8 at 3.  Based on his "experience," "inspection of the Plaintiff's car, "the exemplar Dodge Neon vehicle inspection, sled demonstrations performed for this matter, and material" he has "reviewed to date," he concluded that "there is no physical evidence that the driver's seat belt restraint system failed to function properly," and "Ms Thompson" was not wearing her seat belt at the time of the crash.  *Id*. at 5.  Thompson moves to exclude the sled testing evidence because it was not conducted on the exact same conditions present in this crash and crash test dummies "behave[] nothing like an actual human being."  Doc. 184 at 3.

Plaintiff overstates the relevance and intended use of this testing evidence.  TRW's expert relies on this sled testing evidence to evaluate not the complete theory of the crash but a single conclusion by Plaintiff's expert that markings on the seat belt evidence its use in the crash.  Klima testified at his deposition that he does not intend to suggest the sled demonstration is a replica of the accident; he was using the testing as "a tool to do a comparative of the physical evidence."  Doc. 205-7 at 4-5 ("It's not intended to try to replicate any specific collision event but it is a fair representation of the amount of energy that an occupant could impart into a restraint system.").  Plaintiff's complaint that the testing conditions are not sufficiently similar to the accident conditions misses the point.  Testing must be similar in all respects only when offered "as direct proof of

negligence, a design defect, or notice of the defect."[17]  The Court is persuaded by the Seventh

Circuit's reasoning when upholding the inclusion of sled-testing results under similar circumstances

in *Gilbert v. Cosco, Inc.*:

> The sled tests were relevant evidence because they demonstrated physical principles
> that formed a basis for [defendant's] expert opinion and contradicted the opinion of
> the [plaintiffs'] expert witness. . . .  When tests are allowed into evidence for limited
> purposes, the jury should be "carefully instructed as to the extent to which they can
> use and consider tests of this kind."  Such an instruction helps prevent undue
> prejudice.[18]

Any concern that the sled testing may mislead the jury should be sufficiently eliminated by a

limiting instruction informing the jury that the sled testing is only relevant to the extent that it tests

plaintiff's expert's opinion.  Should Plaintiff desire such an instruction, Plaintiff must submit the

proposed instruction to the Court prior to the introduction of this evidence and remind the Court of

the need to read the instruction immediately in advance of the evidence. Although presentation of

this evidence may take time, the Court is not persuaded that this evidence will result in an undue

delay or waste of time.  And to the extent that Plaintiff argues that any seatbelt evidence is no longer

relevant because she has settled her claims with the seatbelt manufacturer, this Court has already

ruled that the seatbelt evidence remains relevant in this case because the seatbelt-defect allegation

has been inextricably intertwined with the airbag system defect theory in the complaint and

Plaintiff's experts' opinions. *See* Doc. 208 at 6-7.

Plaintiff's request to exclude the sled testing evidence is denied.

**2.      Surrogate Modeling**

Thompson seeks to exclude evidence of surrogate modeling performed by TRW's

biomechanical expert, Elizabeth Raphael.  Doc. 184 at 9.  She argues that the surrogate

testing—relied on by TRW's expert Benedict in his opinions, should also be excluded because there

are substantial differences between the way Thompson customarily positioned herself in her

automobile and the way the "surrogate" was situated.  *Id*.  TRW responds that Raphael's work is

consistent with that of Thompson's own biomechanic, who placed the driver closer to the wheel than

---

[17]      *White v. Ford Motor Co.*, 312 F.3d 998, 1009 (9th Cir. 2002).

[18]      989 F.2d 399, 403-04 (1993) (quoting *Robinson v. Audi NSU Auto Union Aktiengesellschaft*,
739 F.2d 1481 1485 (10th Cir. 1984)).

1  was analyzed in Thompson's seatbelt expert's report.  Doc. 205 at 10.  TRW suggests that if

2  Thompson is concerned that its surrogate modeling is not identical to how Thompson would have sat

3  in the car, it can explore those differences on cross-examination.  *Id.* at 10-11.

4        At this point, and based upon the information and arguments offered by the parties, the Court

5  cannot conclude that TRW's surrogate modeling is so deficient that it–and any opinions that rely on

6  it—should be excluded.  Accordingly, the motion is denied, and the Plaintiff remains free to explore

7  any differences or deficiencies in this modeling on cross examination and by presenting her own

8  expert's surrogate-modeling evidence.[19]

9        **3.    Plaintiff's Comparative Negligence**

10        Thompson next seeks to prevent TRW from arguing that she was comparatively negligent

11  because she did not wear her seatbelt at the time of the crash.  She argues that NRS § 41.141(5)

12  precludes a product manufacturer from arguing the plaintiff's comparative negligence in a products

13  liability case, and that her good-faith settlement with Autoliv and the operation of NRS § 17.245

14  precludes TRW from arguing that she was contributorily negligent for failing to wear her seatbelt.

15  Doc. 184 at 10-11. TRW responds that it acknowledges that the jury may not consider evidence of

16  seatbelt use to determine liability, but this Court has already rejected Plaintiff's argument that her

17  settlement with Autoliv bars evidence of seatbelt use.  Doc. 205 at 11.  Further, TRW contends that

18  Thompson's assertion of a negligence claim and its pleading of the affirmative defense of

19  contributory negligence give this defendant the opportunity to argue this defense, which cannot be

20  eliminated with a mere motion *in limine*.  *Id.*[20]

21        The Court agrees that Thompson's argument merely rehashes the very arguments rejected in

22  this Court's previous order regarding seatbelt use.  *See* Doc. 208.  Although TRW may not argue

23  that Thompson is responsible for her own injuries because she was not wearing her seatbelt—a

24  limitation that TRW acknowledges—TRW can rebut Plaintiff's theories with its own theories, which

25

26  [19]      *See Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 596 (1993) ("Vigorous cross-examination
     [and] presentation of contrary evidence . . . are the traditional and appropriate means of attacking . . .
27  evidence.").

28  [20]      The Court has not been able to confirm this, as TRW's answer to the amended complaint does
     not appear in the docket.

1   include the opinion that she was not wearing her seatbelt.  As this Court has previously held,

2   Plaintiff may offer a limiting instruction on the use of the seatbelt evidence.  Doc. 208 at 7-8.  A

3   proper limiting instruction should cure any of Plaintiff's purported concerns, and her motion in

4   limine in this regard is denied.

5           **4.      TRW's Thruster Testing**

6           Thompson next seeks to exclude evidence that TRW's post-accident testing of the AECM

7   device revealed that it was fully functional at the time of the crash.  Thompson argues that she does

8   not dispute that the device was functioning at the time of the crash; her theory is that the problem

9   was not that it did not function as intended but that the as-intended design of the component is

10  defective.  Doc. 184 at 12.  She contends that allowing the introduction of the thruster results will

11  confuse the jury and unnecessarily increase the length of what is already going to be a long trial with

12  irrelevant evidence.  *Id*. at 13.  TRW responds that it must be permitted to defend itself by

13  demonstrating that the system operated as Chrysler specified and in accordance with the design

14  called for by Chrysler.  Doc. 205 at 13.

15          Plaintiff acknowledges in her own characterization of her key contentions in this case that

16  she claims "that TRW had included an airbag suppression feature Chrysler never requested," Doc.

17  183 at 7, thus Chrysler's specifications—and TRW's compliance with them—are relevant.  Plaintiff

18  has not demonstrated that the thruster-testing evidence will be so voluminous that it will

19  unnecessarily elongate this trial or that the jury will be confused by it.  Accordingly, Plaintiff's

20  motion in this regard is denied.

21          **5.      Dr. Mark Kabins's Criminal Conviction**

22          Thompson next seeks to exclude evidence that her orthopedic surgeon pled guilty to, and was

23  convicted of misprision of felony in 2010, resulting in probation.  Doc. 184 at 14.  Thompson

24  contends that this conviction has no relevance in this case and should be excluded under FRE 403.

25  In response, TRW claims that Dr. Kabins is expected to testify regarding Thompson's medical

26  damages, including a back surgery Kabins performed on the very day that he was sentenced.  Doc.

27  205 at 14.  Since Kabins's conviction required the Court to find a knowing and affirmative act of

28

concealing a felony, for which a conviction may be more than one year in length, it is properly admissible under Federal Rule of Evidence 609(a)(1) or 609(a)(2). *Id.* at 14-15.

Federal Rule of Evidence 609 provides that, subject to Rule 403, the Court must admit evidence of "a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year . . . in which the witness is not a defendant."[21]  Additionally, it must be admitted "for any crime . . . if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement."[22]  Dr. Kabins's conviction is just four years old, and one of the elements of misprision of a felony is the active concealment of a crime.[23]  An affirmative step to conceal a felony is more than an omission; it is an act from which dishonesty can be inferred, rendering it admissible under both FRE 609(a)(1) and (a)(2).  Plaintiff has not demonstrated that evidence of this conviction is more probative than prejudicial in this case in which her medical condition is highly relevant and this physician's testimony about it will be central to her damages.  However, the Court has no desire to turn Dr. Kabins's conviction into a sideshow.  Accordingly, the evidence in this regard will be limited to referencing only that Dr. Kabins has been convicted of the felony of misprision of a felony and listing the elements of that felony offense.

### 6.      The Non-human Hair on the Mirror of the Car

Thompson argues that it has been "scientifically established" that hair samples found on the rearview mirror of her car were not human, but from a cat.  Doc. 184 at 15.  Thus, "all photographs containing the hair on the mirror, and all mention of such hair to prove that" Plaintiff "struck her head on the mirror, should be excluded" as "legally irrelevant and of no probative value whatsoever." *Id.*  TRW responds that it will not introduce the hair-on-the-mirror evidence and will approach the Court if it changes its mind. Doc. 205 at 16.  As there appears to be no controversy on this topic for this Court to resolve, the motion in this regard is denied as moot.

---

[21]      Fed. R. Evid. 609(1).

[22]      *Id.* at 609(2).

[23]      18 U.S.C. § 4.

1

2

### 7.     Engineering Standards, Performance Standards, and Government Requirements

3      Thompson next seeks to exclude all engineering standards, performance standards, and

4 government requirements except "Chrysler's Performance and Engineering standards of the AECM

5 and airbag only, providing that the appropriate foundation can be laid . . . ."  Doc. 184 at 18

6 (emphasis in original).  She argues that any other standards and requirements regarding the Dodge

7 Neon are irrelevant to this very targeted claim against TRW, and such documentation should be

8 excluded under the evidentiary rules regarding relevancy.  *Id.*  In response, TRW argues that

9 evidence of the car's compliance with safety standards is generally relevant, and it is impossible to

10 respond to a request to exclude "other" safety standards without knowing in advance what particular

11 standards Plaintiff is seeking to exclude.  Doc. 205 at 16-18.

12      Plaintiff has not demonstrated that any and all standards and regulations are irrelevant and

13 should be excluded at trial, and she has not carved out—with sufficient specificity—which standards

14 and regulations she finds admissible and inadmissible.  Accordingly, the Court denies this motion

15 without prejudice to Plaintiff's ability to raise specific objections regarding such standards and

16 regulations at trial where the Court can better address this issue in appropriate context.

17      ### 8.     Plaintiff's Social Network Postings

18      Thompson next asks to exclude her posts to Facebook and other social networking accounts

19 as irrelevant and more prejudicial than probative.  Doc. 184 at 19.  She argues that the postings may

20 unfairly mask the emotional distress she is suffering.  *Id.* at 20.  She offers examples of cases in

21 which trial courts have excluded or limited the scope of social networking postings.  *Id*. at 20-21.

22 She asks the Court to cull through nearly a thousand pages of postings (and some not even produced

23 at the time the motion was filed) to determine their admissibility.  TRW responds that the postings

24 are relevant to Thompson's claims that the accident has caused her severe physical injuries,

25 emotional distress, and impaired her quality of life.  Doc. 205 at 19.  It offers opinions from other

26 trial courts that have recognized the relevance of social networking evidence and argues that there is

27 "no basis for universally excluding all social networking data."  *Id*. at 20.

28

1    Evidence of social networking postings is not subject to heightened admissibility standards

2  simply because of its nature.  Photos and similar postings about Thompson's physical and emotional

3  condition and lifestyle are relevant to her claims, and If TRW can demonstrate its admissibility

4  under the rules of evidence, this material may likely be admissible.  However, some limitations on

5  this evidence is appropriate to ensure that it does not unduly delay the trial.  The Court is not

6  inclined to pour through hundreds of pages of social media postings without any indication of which

7  pages, if any, any party intends to introduce at trial, and it appears that additional evidence has been

8  exchanged (or ordered to be produced) since Plaintiff filed this motion.  Accordingly, the parties are

9  hereby ordered to meet and confer on this topic before trial.  Plaintiff and Defendant shall both

10  identify for the other the specific pages they will seek to introduce.  If agreement about the

11  admissibility cannot be reached, then any party seeking to introduce this evidence must submit the

12  specific pages to the Court for review no less than 48 hours before seeking to use this information at

13  trial.  The Court will defer any ruling on this issue until such time as the parties have completed this

14  meet-and-confer requirement.

15    **9.    Plaintiff's Tattoos**

16    Thompson next asks the Court to prevent the jury from seeing her tattoos because "unfair

17  prejudice to the plaintiff is more probable than not if the jury is allowed to see her tattoos."  Doc.

18  184 at 26.  In response, TRW argues that it "has no intention of and no interest in denigrating

19  [Thompson] because of her tattoos," but a blanket exclusion of any such evidence will result in the

20  exclusion of all photos of the Plaintiff except those staged by Plaintiff's counsel for this litigation.

21  Doc. 205 at 21.

22    Plaintiff has not demonstrated any reason for this Court to make the blanket ruling she

23  suggests.  Indeed, her request is lacking in the most important information for this Court—the nature

24  and location of the tattoos that she claims a jury will judge her for.  As the Plaintiff has not given

25  this Court all the information it needs to determine the prejudicial nature of her tattoos, the motion is

26  denied.

27  ///

28

1    **10.     Evidence of Prescription Antibiotics Found in Plaintiff's Car**

2    The last request in Thompson's Second Omnibus motion is to exclude evidence that a bottle

3    of prescription antibiotics was found in her car after the accident because physical condition at the

4    time of the accident has no bearing on her recovery in this case; even if the evidence is marginally

5    probative, its prejudicial effect greatly outweighs this value such that the evidence must be excluded.

6    Doc. 184 at 26.  In response, TRW argues that it has no intention of offering evidence of the

7    antibiotics found in Thompson's car at this time.  Doc. 205 at 22.  TRW will be held to its

8    representation, and with no controversy on this point, the Court denies Thompson's motion in limine

9    in this regard.

10    **11.     Motion for Leave to File Supplement to Doc. 184 (Doc. 213)**

11    Thompson also moves for leave to file supplemental authority into the Court supporting her

12    omnibus motion.  Doc. 213.  This "authority" consists of an opinion issued by the Supreme Court of

13    Texas, issued on March 28, 2014, which was not available to Thompson at the time she filed her

14    original motion in limine.  Doc. 213-1 at 7.  Thompson claims this opinion relates to whether TRW

15    can properly rely on compliance with specific federal standards to support its defense that its airbag

16    functioned normally.  *Id.*   Opinions from the Supreme Court of Texas are persuasive in nature only.

17    The Court finds no compelling reason to consider this supplemental authority, and Thompson's

18    motion for leave to file this supplement is denied.

19    **D.     Thompson's Third Omnibus Motion in Limine to Exclude Evidence, Testimony and Arguments of Defense Counsel (Doc. 189)**

20

21    **1.     Preclude TRW's Statements Contradicting its Rule 36 Admissions**

22    Thompson argues that TRW should be precluded from "attempting to deny, alter, amend, or

23    modify" specific statements contained in TRW's Rule 36 Requests for Admissions.  Doc. 189 at 2.

24    Specifically, these statements are:

25    A.     As far as the AECM was concerned, the de-powered airbag made no difference in the function and calibration of the AECM (RFA No. 1 at 6:2-10).

26

27    B.     The AECM in the Plaintiff's vehicle functioned exactly as designed (RFA No. 11, at 8:12-15).

28    / / /

C.   TRW is in the business of making, designing and manufacturing airbags and airbag components.  RFA No. 14 at 8:28-9:1).

D.   The AECM assumed that Nicole was unbelted (RFA No. 23 at 11:1-7); (Third RFA No. 72 at 6:12-28).

E.   No calibration changes were made to the AECM from model years 1997 to 1998 (Third Rfs, No. 74 at 6:28-7:7).

F.   TRW jointly defined some of the test that were run on the Dodge Neon (Third RFAs, No. 76 at 7:28-8:7).

G.   TRW did not conduct any film analysis on any of the crash tests during the design and development stage of the AECM (Third RFAs, Nos. 88-95 at 12:12-15:2).

H.   TRW knew that the airbag would be de-powered (Thrid RFAs No. 104 at 16:28-17:7).

Doc. 189 at 2-3.  Thompson claims that these statements have already been "unconditionally admitted" by operation of Rule 36 and need no further foundation, authentication, testimony, or evidence to be properly introduced.  *Id.* at 3.  Thompson also requests that these responses be read at the commencement of trial.  *See id.*

In response, TRW agrees with Thompson that it should be held to its responses "as a general principle," but objects that these answers are taken out of context and should be provided to the jury, if at all, as complete answers with their accompanying questions.  Doc. 206 at 2.  TRW also argues that there are no grounds for reading TRW's responses at the beginning of trial, and objects to the same.  *Id.*

Thompson offers no authority for the proposition that TRW's admissions should be read to the jury at the commencement of trial.  TRW correctly points out that Rule 106 is inapposite because this rule merely requires the Court to permit introduction of another portion of the evidence "that in fairness ought to be considered at the same time."[24]  Having received no specific guidance on how Thompson seeks to introduce this evidence, the Court lacks the context necessary to fairly rule on this point before trial and denies the motion in this regard.

*/ / /*

---

[24]   Fed. R. Evid. 106.

### 2. Jury View of Thompson's Damaged Car and the Exemplar Car

Thompson argues that although a jury view of the actual damaged Dodge Neon is not evidence, since the car has been preserved since the accident, it could and should be physically inspected by the jury at Plaintiff's counsel's legal offices.  Doc. 189 at 3-8. TRW does not object to a jury view of the vehicle, so long as the vehicle is viewed at the courthouse, as viewing the vehicle at Thompson's attorney's firm could lead to, *inter alia*, undue delay and "create the risk of numerous scenarios involving jurors that could lead to a possible mistrial."  Doc. 206 at 2.  In the event the jury views cannot take place in the Courthouse, TRW submits that images of the accident scene would be sufficient.  *Id.* at 3.

The Court denies the request for a field trip to view the vehicle.  No party has demonstrated why the condition of the car cannot be fairly perceived and thoroughly appreciated through photographs and other evidence presented in the courtroom.  And it is anticipated that the parties' experts will testify at length about the condition of the car, focusing on the specific defects alleged in this case.  Moreover, the central issue in this case, as Plaintiff has described it, is TRW's design of the brain of its airbag system and its protection (or lack thereof) of vehicle occupants.  Doc. 183 at 4. That design—which focuses primarily on what Plaintiff repeatedly refers to as a "secret algorithm" cannot be observed by a jury view.  Accordingly, the Court finds that any probative value to a jury view will be substantially outweighed by the attendant delay and inconvenience associated with the logistics of such a trip and the danger that a jury visit will improperly focus on the exterior of the vehicle.

### 3. Plaintiff's Awards, Certificates, and Trophies

Thompson seeks to preadmit Exhibit 6, which consists of an award she received in high school, photocopies of pages from her senior yearbook, and a project she prepared during her first semester of college.  She contends these are evidence of who she was and the life she was on track for at the time of the accident.  Doc. 189 at 9.  TRW objects that these documents are inadmissible hearsay, Doc. 206 at 3, but it does not appear these documents are offered for the truth of any matter, and the Court finds them admissible, subject to Plaintiff's introduction of them through a witness (likely herself) with personal knowledge of the authenticity of these documents and their relevance.

### 4.    "Nicole's Story" DVD, Interview, and the "Nicole and Carter" DVD

Thompson also seeks to preadmit a produced DVD entitled "Nicole's Story," and a taped interview of Thompson in 2007 just after she learned to speak again after her stroke, and a DVD entitled "Nicole and Carter" that depicts Plaintiff's struggles as a disabled mother. Doc. 189 at 8-16. TRW objects to the introduction of these "contrived" day-in-the-life productions as inadmissible hearsay. Doc. 206 at 6-7. At this point, the Court lacks the information it needs to determine the admissibility of these items at trial—on whatever basis. Plaintiff notes that certain statements on these recordings may need to be redacted based on the Court's seatbelt-related rulings, and although the version of the Nicole's Story video that TRW was provided was set to Five for Fighting's "100 Years," Plaintiff suggests that soundtrack has been replaced with "light instrumental music." As it does not appear that this Court has been provided with the version of these videos that Plaintiff intends to offer at trial, the Court orders that Plaintiff deliver to the Court in camera (with a copy to defendants) a DVD of these items in the form it seeks to admit. The Court will reserve any ruling on this issue until after it has had an opportunity to review these items.

### 5.    Plaintiff's Pregnancy-related Documents

Thompson next asks "that her attorneys be permitted to discuss her pregnancy, and to introduce all related documents, as well as the testimony of her OB/GYN and high risk pregnancy doctor, along with any other persons most knowledgeable for these treaters, whose testimony may be necessary for foundational purposes." Doc. 189 at 15-16. TRW responds, "we have no idea what specific evidence Plaintiff is talking about," Doc. 206 at 7, and neither does this Court. As Plaintiff has not identified the specific evidence it is referencing by this request, any ruling on this request would be premature. The motion is denied.

### 6.    Testimony from Taylor Sisney and Melissa Plemmons

Thompson also asks the Court to permit the testimony of the father and grandmother of her child, Carter. Doc. 189 at 16. She notes that they had been "inadvertently" not identified as witnesses until recently. *Id*. TRW has no objection to these witnesses being added to Thompson's witness list but believes that a pretrial ruling on the admissibility of their testimony would be improper as nobody knows yet what they will testify to. Doc. 206 at 7. It appears that the parties

1    have reached an agreement on the addition of these witnesses to Plaintiff's list, leaving nothing in

2    that regard for the Court to determine; to the extent Plaintiff was seeking a determination on the

3    admissibility of these witnesses' testimony, that request is denied as premature.

4    **E.      Thompson's Fourth Omnibus Motion in Limine to Exclude Evidence, Testimony and Arguments of Defense Counsel.  Doc. 190.**

5    **1.      Affidavits Regarding Plaintiff's Seatbelt Use**

6

7            Thompson argues that early in the course of this litigation, she procured affidavits from

8    "various people" about her driving habits and the physical and mental changes in Plaintiff after the

9    accident.  Doc. 190 at 2.  She asks the Court to allow her "attorneys to introduce, refer to, and use"

10   the affidavits for those witnesses who are not able to testify at trial.  *Id.* at 23.  TRW has objected to

11   the introduction of these affidavits as inadmissible hearsay and cumulative, and Plaintiff asks this

12   Court to allow her to offer the affidavits in lieu of live testimony by the affiants who have moved out

13   of state or otherwise become unavailable.  *Id.* at 3.  TRW notes that each of the eight affidavits

14   Thompson references "is in identical form, prepared by the same office, and acknowledged by the

15   same notary public," and thus they are cumulative and would waste the court's time.  Doc. 206 at 7-

16   9.  TRW argues that affidavits are not trial evidence, but instead are inadmissible hearsay for several

17   reasons.  *Id.* at 8.  TRW also takes issue with Thompson's proposed introduction of the affidavits

18   under the "habit" exception to hearsay, arguing that the scope of the affidavits goes "much, much

19   further," including affiants' feelings and concerns about Thompson, which are, *inter alia*, irrelevant

20   and lack foundation.  *Id.* at 8-9.  Thompson also argues that three of the affivavits—from Benny

21   Roth, Amy Thompson, and Darcy Forsyth—include double hearsay by containing "statements about

22   what [Thompson] purportedly told them or others."  *Id.* at 9.

23           The Court notes that of Thompson's eight affidavits, three were written by witnesses who

24   Thompson claims will be testifying at trial.  Doc. 109-1 at 2-23.  Upon consideration of the

25   affidavits the Court finds they are cumulative and is disinclined to allow each affidavit to be read to

26   the jury.  The Court thus exercises its discretion under FRE 403 to deny the motion because the

27   affidavits are cumulative, obviating the need to address the hearsay issue.

28

### 2.    Owner's Manual Excerpts

Thompson seeks to preadmit four pages of her car's owner's manual.  Doc. 190 at 4-7.  Thompson contends that the excerpts are relevant to her failure to warn claim because they show that TRW should have informed Chrysler that information about airbag deployment in a "moderate-to-severe frontal collision" was wrong.  *Id.* at 7.  According to Thompson, the excerpts also show how little Chrysler knew about TRW's AECM and refute the notion that Chrylser was "intimately involved with the design of the AECM."  *Id.*  Since TRW would have known that Chrysler would have supplied a separate owner's manual to its car purchasers, its failure to specifically warn Chrysler in light of this alleged difference between how Chrysler believed the AECM would function and how the AECM actually functioned supports Thompson's failure to warn case against TRW.  *Id.* at 9.  Thompson argues that TRW has already relied on the accuracy of the airbag warnings in its defense, and thus all objections thereto are waived; TRW's "original and replacement experts" analyzed the "failure to warn issues in their reports"; TRW's claim that Chrysler knew how the AECM worked stands in "direct contrast" to what Chrysler was actually telling its end users; the owner's manual is a "business record" that may be admitted as a hearsay exception; the excerpts are also admissible under FRE 803(7) due to the absence of a record of regularly conducted activity; and both parties' experts have repeatedly examined, used, and relied upon the owner's manual in formulating their opinions.  *Id.* at 10-11.  In response, TRW argues that the owner's manual is unauthenticated hearsay, and that the proposed excerpts are an incomplete and "cherry-picked" version of the owner's manual, and under FRE 106, TRW has the right to request admission of either other sections of the manual, or the manual in its entirety.  Doc. 206 at 9-10.

Plaintiff has not demonstrated her ability to introduce this evidence through a witness at trial with personal knowledge or that she can establish the requisite foundation to avoid the hearsay rule.  Accordingly, the Court denies this request as premature.  Plaintiff can raise these issues again at trial when she is prepared to present the evidence through a knowledgeable witness and with a proper foundation.

/ / /

1

2      **3.      Chrysler's CAIR Reports**

3          Thompson next seeks to preadmit a portion of Chrysler's Customer Assistance Inquiry

4      Records ("CAIR" reports) "obtained in discovery" through her separate lawsuit against Chrysler and

5      which "would have automatically been turned over in Chrysler's response to TRW's subpoena duces

6      tecum in early 2010." Doc. 190 at 11. Thompson claims that the records "demonstrate that normal

7      consumers - as well as Chrysler itself - had a reasonable expectation their airbags would deploy

8      during the very type of high speed collision in which [she] had been involved." *Id.* at 12. She also

9      argues that there is no other efficient or reasonably available means by which to obtain this

10     information, and the reports constitute records maintained in the ordinary course of Chrysler's

11     business, and thus are an exception to the hearsay rule at FRE 803, and are self authenticating under

12     FRE 902(11). *See id.* Thompson offers to limit the scope of any introduced reports to the 1997 and

13     1998 Dodge Neon (which used the same AECM and algorithm calibration), and to complaints

14     regarding crashes into vertical posts. *See id.*

15         TRW responds that it should not be "forced to guess" what reports Thompson is talking

16     about and that any ruling in this regard would be premature. Doc. 206 at 10. TRW also argues that

17     the CAIR reports are double hearsay, as they contain information prepared by an employee with

18     information supplied by another person," and that no exception covers such double hearsay. *Id.*

19     TRW also objects to the evidence as irrelevant, unreliable, unsubstantiated, and unfairly prejudicial,

20     as Thompson's airbag expert, Chris Caruso, indicated that "people complain about everything," and

21     "there are complaints on almost every vehicle out there for non-deployment based on customer

22     perception." *Id.* Finally, TRW argues that even if some reports are admissible, they must be

23     substantially similar to the events in this case. *Id.*

24         There are three obstacles that Plaintiff has not surmounted and that prevent this Court from

25     preadmitting these consumer reports. First, Plaintiff has not authenticated these records as

26     Chrysler's business records. Rule 902(11) states that to be self-authenticating, a "certified domestic

27     record of a regularly conducted activity" must be "shown by a certification of the custodian or

28     another qualified person," which "the proponent . . . must make the record and certification available

for inspection" to the adverse party.[25]  Plaintiff has not offered the requisite certificate of Chrysler's custodian of records to demonstrate that these documents are what Plaintiff purports them to be: documents maintained as a record of Chrysler's regularly conducted business activity.

Second, even if Plaintiff had provided the certificate required by Rule 902(11), she has not established an exception for the hearsay contained within these documents.  If taken at face value, these documents contain consumer reports of vehicle defects.  Plaintiff intends to introduce these documents to demonstrate that, in fact, these defects exist and have been reported and to show the expectations of Dodge Neon owners, thus, she intends to offer the information contained in these reports for the truth of the matters asserted therein.  Unless and until Plaintiff satisfies Rule 902(11) and establishes a hearsay exception for the contents of the CAIR reports, they remain inadmissible. Plaintiff's motion in this regard is denied.

Finally, although Plaintiff provided these records to the Court for consideration with her Fourth Omnibus Motion in Limine, the Court finds no indication that she complied with the local rules in doing so.  The document does not appear in the Court's docket, so the Court assumes that this was provided solely as an *in camera* submission.  Local Rule 10-5(a) requires the proponent of an *in camera* submission to provide a captioned cover sheet "that indicates the document is being submitted *in camera* and shall be accompanied by an envelope large enough for the *in camera* papers to be sealed in without being folded.  A notice of *in camera* submission shall be filed pursuant to the Court's electronic filing procedures."[26]  The Court's consideration of these CAIR reports has not prejudiced TRW because this motion is denied, however, **Plaintiff is ordered to re-submit these documents in compliance with Local Rule 10-5(a) within five days of this order so that they can be properly placed in the Court's record in accordance with the District's established procedures.**  Plaintiff is cautioned that future submissions under seal or *in camera* must be done in accordance with the Court's rules.

*/ / /*

---

[25]     Fed. R. Evid. 902(11).

[26]     Nev. L.R. 10-5(a).

### 4.    Plaintiff's Medical and Related Records

Thompson argues that her medical records fall under several hearsay exceptions, including FRE 803(3) (then-existing mental, emotional, or physical condition), FRE 803(4) (statement made for medical diagnosis or treatment), FRE 803(5) (past recollection recorded), and FRE 803(6) (records of a regularly conducted activity). *See* Doc. 190 at 17.[27]  Thompson also claims that the parties have reached an agreement that the medical records will not be objected to on grounds of authenticity or a "business records" exception, although the parties reserve their rights to object on grounds of hearsay, foundation, relevance, or unfair prejudice. *See id.* at 17-18.  Thompson concedes that a ruling on any objections TRW makes will have to wait until such time as TRW actually objects to the records. *See id.* at 18. The state of this evidence—and the scope of the parties' agreement—is too unresolved for this Court to grant Thompson's request to preadmit any broad category of these documents.  Thompson's motion in limine on this point is denied.

### 5.    Plaintiff's Expert Files

Thompson argues that both parties have agreed that each sides' expert's CV will be admissible, and each expert report may be used to cross-examine that expert but will not be introduced into evidence.  Doc. 190 at 20-21.  Thompson also argues that learned treatises may be introduced as demonstrative aids. *See id.* at 21.  Additionally, Thompson argues that she "reserves the right" to offer "the information in Plaintiff's experts' files at trial, should be need arise, pursuant to all agreements that have been set forth in the Joint Pretrial Order, (Doc. # 138)." *Id.*

In response, TRW confirms that specific stipulations have been made regarding admissibility of expert file items.  Doc. 206 at 13.  TRW argues, however, that to the degree Thompson has reserved her right to offer these items at trial, she has not actually sought any ruling from the court. *Id.* TRW also points out that simply because an expert has relied on a document does not conclusively establish that document's admissibility into evidence. *Id.* at 13-14.

/ / /

---

[27]    Thompson's citation to these rules is slightly different, but the intent of her argument is the same.

An expert's reliance on any piece of evidence does not by itself resolve admissibility questions, and Thompson has not actually sought any ruling on the admissibility of such exhibits. Thompson's motion in limine in this regard is thus denied.

### 6.   Chrysler's Discovery Responses

Thompson argues that she should be allowed to introduce Chrysler's discovery responses from her separate state court action "during cross examination, in rebuttal, and/or for impeachment purposes as the need may arise." Doc. 190. TRW opposes the request and argues that "No rule of evidence exists which forces a party to be bound by a *different* party's discovery responses," and the responses—verified or not—are "pure hearsay." Doc. 206 at 14-15 (emphasis in original).

Thompson fails to direct the Court to any controlling case law for the proposition that a different party's discovery responses may be introduced in a separate action against a prior co-defendant. Even if she had, her claim to have "generally identified" the discovery she wishes to introduce is not sufficient for the Court to rule on it pretrial. Thompson's request to preadmit Chrysler's discovery responses is denied.

**F.   Thompson's Motion in Limine to Preclude the Defendant And/or its Experts to Testify or Submit Evidence or Argument at Trial That the AECM in Plaintiff's Vehicle Was "State of the Art" (Doc. 186)**

Thompson seeks to preclude TRW from arguing that its airbag system was state of the art. She contends that whether TRW's product was state of the art compared to other products is irrelevant under Nevada's consumer expectations test—the standard for strict liability claims—and will only distract the jury from the central issue in this case: what the consumer expected. She also argues that because TRW was marketing a next generation sensor at this time, this product was, in fact, not state of the art.[28]

---

[28]    Plaintiff also argues that the Court's issuance of a protective order (at the urging of TRW) precluded her from conducting discovery into the trade-secret-protected algorithm that controls the deployment of TRW's system, and it would not be fair to allow TRW to present evidence on a theory she was barred from testing. The record does not support Thompson's fairness argument. The magistrate judge denied the motion to compel the trade-secret evidence in part because Thompson's own expert acknowledged that he did not need the algorithm itself to prepare his opinions; he had a "sufficient understanding of the vehicle" based on his own experience to provide all necessary opinions. Docs. 81, 105.

1    TRW responds that it is entitled to present to the jury information regarding the nature and

2  quality of its AECM, which lies at the heart of this case.  Doc. 207 at 8.  TRW argues that its AECM

3  was in fact state of the art, and that the AECM and its "next generation" sensor function similarly

4  with respect to the accident in question, and that the Nevada Supreme Court has confirmed that such

5  evidence is relevant and admissible.  *Id.* at 8-9.  TRW points out that one of the factors relevant to

6  establishing strict liability on a design defect theory is the presence of a safer alternative design.  *Id.*

7  at 9.  TRW argues that the unpublished Ninth Circuit case cited by Thompson to support her

8  argument that state of the art evidence is not relevant in a products liability case involving the

9  consumer expectation test is dicta.  *Id.* at 10.  Thus, the evidence is admissible.

10    To prove her strict products liability claim, plaintiff must demonstrate that "(1) the product

11  had a defect which rendered it unreasonably dangerous, (2) the defect existed at the time the product

12  left the manufacturer, and (3) the defect caused the plaintiff's injury."[29]  The plaintiff carries the

13  burdens of production and persuasion.[30]  A plaintiff proves proximate cause by "show[ing] that the

14  design defect in the product was a substantial factor in causing his injury."[31]  "Although the

15  definitions of the term 'defect' in the context of products liability law use varying language, all of

16  them rest upon the common premise that those products are defective which are dangerous because

17  they fail to perform in the manner reasonably to be expected in light of their nature and intended

18  function."[32]

---

[29]    *Rivera v. Phillip Morris, Inc.*, 209 P.3d 271, 275 (Nev. 2009) (quotation omitted). Because jurisdiction is premised on diversity, Nevada substantive law applies.  *Nevada VTN v. General Ins. Co. of Amer.*, 834 F.2d 770, 773 (9th Cir. 1987).

[30]    *Rivera*, 209 P.3d at 275 (citation omitted).

[31]    *Price v. Blaine Kern Artista, Inc.*, 893 P.2d 367, 370 (Nev. 1995); *Ginnis v. Mapes Hotel Corp.*, 470 P.2d 135, 138 (Nev. 1970) (extending *Shoshone Coca-Cola Bottling Co. v. Dolinski*, 420 P.2d 855, 857-58 (Nev. 1966)).  A plaintiff alleging strict liability based on a design defect must "still establish that his injury was caused by a defect in the product, and that such defect existed when the product left the hands of the defendant.  The concept of strict liability does not prove causation, nor does it trace the cause to the defendant."  *Ginnis*, 470 P.2d at 138 (quoting *Shoshone*, 420 P.2d at 858).

[32]    *Ginnis*, 470 P.2d at 138 (quoting and adopting the test in *Dunham v. Vaughan & Bushnell Mfg. Co.*, 247 N.E.2d 401, 403 (Ill. 1969)).  Nevada's standard is referred to as the "consumer expectations test."

Nevada law recognizes that evidence that a product was state of the art or that a safer design was feasible is relevant in a strict products liability action.[33]  And numerous courts have recognized that in a crashworthiness case like this one in which the plaintiff claims not that a vehicle's defect caused the collision but that the defect caused injuries beyond those that should have been expected absent the defect, whether the product's design is state of the art is relevant to rebut the design-defect allegation.[34]  In arguing that Defendant's state-of-the-art evidence is irrelevant under Nevada's consumer expectations test, Plaintiff offers the unpublished opinion in *Ricci v. AB Volvo*, a crashworthiness case in which a Ninth Circuit panel noted that Nevada courts had not yet determined the relevance of "state of the industry" evidence as a defense in a products liability action.[35]  The panel suggested how the Nevada Supreme Court "might" resolve that question but expressly declined to resolve the issue.  Thus, *Ricci* adds nothing to the instant discussion.  As the Nevada Supreme Court has noted that the goal of strict products liability is to "require manufacturers to make their products as safe as commercial feasibility and the state of the art will allow,"[36] and Plaintiff has not offered any authority for the exclusion of Defendant's state-of-the-art evidence, the Court declines this *in limine* invitation to exclude it.

Plaintiff's argument also ignores the fact that her products liability claim is based on numerous theories other than strict liability, and she fails to evaluate the relevancy of state-of-the-art evidence in defense of her negligence, gross negligence, and negligence per se claims.  *See* Doc. 33.  The absence of a comprehensive analysis in the context of these claims gives this Court one more reason to deny this *in limine* request.  Moreover, it appears that Plaintiff's real dispute with TRW's state-of-the-art evidence is its sufficiency, not its relevance, which is a dispositive issue more appropriate on summary judgment than in a pretrial motion *in limine*.

---

[33]     *See, e.g., Fyssakis v. Knight Equip. Corp.*, 826 P.2d 570, 572 (Nev. 1992); *Robinson v. G.G.C., Inc.*, 808 P.2d 522, 525-26 (Nev. 1991).

[34]     *See, e.g., Toyota Motor Corp. v. Gregory*, 136 S.W.3d 35, 41-42 (Ken. 2004) (collecting cases).

[35]     106 Fed. App'x. 573, 576 (2004).

[36]     *Robinson*, 808 P.2d at 524.

**G.**   **Plaintiff's Motion in Limine to Preclude Any Testimony, Evidence, or Argument During Trial Regarding TRW's AECM/Algorithm Protecting Against Injury Due to Deployment of Air Bags with Out-of-Position Occupants (Doc. 187)**

In the guise of a *Daubert* motion, Plaintiff asks the Court to preclude TRW from arguing or presenting any evidence that the airbag-system designer had support for its decision to design its product to assume at some point during a collision that occupants would become out of position and be too close to the air bag module to permit its safe deployment.  Doc. 187.  Although Plaintiff offers pages of law on the admissibility of expert opinions, she does not connect that law to her request that "Defendant and its witnesses be precluded from offering any evidence, opinion and/or argument in support of a contention that the AECM and/or its algorithm affords protection against injury due to deployment of air bags with out of position occupants."  Doc. 187 at 6.  Indeed, she offers zero argument that this is an expert witness problem, and the Court perceives it instead as an effort to eliminate—through a motion *in limine*—one of TRW's factual defenses.

The premise of Plaintiff's motion is that "TRW has admittedly relied on mere supposition to support its claim that an occupant would be 'out of position' regardless of the circumstances of the accident and simply because of the accident itself," and because of this admission, TRW "should not be allowed to present any argument and/or evidence that its 'out of position' assumption was based on confirmed empirical testing.  It was not.  It was simply based on conjecture and speculation."  *Id.* at 4.  Conveniently, Plaintiff offers absolutely zero support in the record for this "admission" by TRW and no authority for the proposition that this "admission" would render TRW barred as a matter of law from offering contrary evidence at trial.  In sum, it appears that Plaintiff is attempting through this *in limine* motion to obtain a factual ruling that is neither appropriate for this vehicle nor supported by any law or procedure that this Court is aware of.  The motion is denied.

**H.**   **Thompson's Motion in Limine to Preclude Any Testimony, Evidence, or Argument During Trial Regarding TRW Testing its AECM/Algorithm Against Concatenated Events (Doc. 188)**

Thompson recycles the *Daubert* wrapping from her "out of position" motion in limine for this next request "that Defendant and its witnesses be precluded from offering any evidence, opinion and/or argument in support of a contention that the AECM and/or its algorithm was tested on and/or properly functional in a concatenated event."  Doc. 188 at 5.  Again Plaintiff offers pages of law on

1    the admissibility of expert opinions but does not connect that law to her request for relief.  The Court

2    perceives this issue just as the last one as an effort to eliminate—through a motion *in limine*—one of

3    TRW's factual defenses.

4           The premise of Thompson's request in this regard is that "The truth of the matter is, the

5    subject AECM and algorithm was never tested against computer simulated concatenated events.

6    TRW cannot claim otherwise.  Neither can it legitimately show (by reference to test data) the subject

7    algorithm would properly and reliably respond in a concatenated event."  Yet again, Plaintiff offers

8    absolutely zero support in the record for this "truth" no authority for the proposition that this

9    inability to "legitimately show" its version of the facts at trial.  In sum, it again appears that Plaintiff

10   is attempting through this *in limine* motion to obtain a factual ruling that is neither appropriate for

11   this vehicle nor supported by any law or procedure that this Court is aware of.

12          Thompson is not challenging the scientific rationale behind TRW's expert's conclusions but

13   rather whether any specific testing was performed.  TRW argues that it designed the

14   AECM/algorithm to Chrysler's specifications, and indeed Rochette and Pearson testified that while

15   testing against innumerable cocantenated events was within the realm of possibility, it is not

16   efficient.  *See* Doc. 188-1.  Thompson is free to explore any supposed factual disparities regarding

17   concatenated-event testing at trial, and the Court will consider whether the testimony should be

18   properly limited at that time based upon any objections then made.  A *Daubert* motion, however, this

19   is not, and Thompson's request is denied.

20   **I.     Defendant TRW's Omnibus Motion in Limine (Doc. 185)**

21          TRW has also filed its own motion *in limine*, pinpointing 35 evidentiary issues for which it

22   seeks a pretrial ruling.  Doc. 185.  These requests largely overlap the topics addressed by

23   Thompson's own motions.  Nevertheless, for the sake of completeness and simplicity, the Court

24   considers each of these requests individually.

25          **1.     Customer Complaints re: any TRW Product**

26          TRW asks the Court to exclude "any evidence, testimony, or argument regarding complaints

27   made by customers concerning any TRW product" as inadmissible hearsay, and—to the extent they

28   involve *other* products than the airbag system—irrelevant.  Doc. 185 at 2.  TRW promises to offer

1   "additional trial briefing on this limine point, but the Court has not found any.  Thompson opposes

2   the request by referring back to her arguments on Chrysler's CAIR reports.  Doc. 204 at 2.  Again

3   the Court finds that the argument on these customer complaints is insufficiently developed to permit

4   this Court to make an admissibility determination at this time.  Accordingly, the motion is denied.

5              **2.       Other Allegedly Similar Incidents**

6              TRW next asks to exclude "any evidence, testimony, or argument regarding allegedly similar

7   incidents unless Plaintiff first establishes the evidentiary foundations of relevance and substantial

8   similarity."  Doc. 185 at 2.  TRW does little to explain what evidence, specifically, it anticipates,

9   except to provide as a single example Plaintiff's expert Chris Caruso's description of "the number of

10  people reportedly killed in crashes into various poles" while admitting he "has no idea" about the

11  details of those crashes.  *Id*. at 2-3.  TRW again predicts that it will provide additional briefing on

12  this point, but the Court has not found any.  *Id*. at 3.  The motion in limine is premature, as TRW's

13  motion depends on the laying of an adequate evidentiary foundation at trial, and the Court lacks

14  sufficient information about the other incident evidence to determine admissibility on a category-

15  wide basis at this time.  Accordingly, TRW's motion in this regard is denied.

16             **3.       Vehicle Ratings**

17             TRW next seeks to exclude "any evidence, testimony, or argument regarding vehicle ratings"

18  as they apply only to vehicles as a whole, not individual components like the AECM, and Plaintiff's

19  expert Caruso admits that vehicle crash ratings are not directly relevant here.  Doc. 185 at 3.  TRW

20  argues that the ratings are hearsay and would only confuse the issues, mislead the jury, and result in

21  unfair prejudice.  *Id.*  Thompson does not deny that her own expert admits the ratings are not

22  relevant and argues instead that TRW should not be permitted to avoid responsibility for the

23  vehicle's crashworthiness when it designed the crash sensor.  Doc. 204 at 7.  As the relevancy of the

24  entire vehicle's crash rating does not appear to be relevant, and any marginal relevancy that the

25  rating may have risks jury confusion, the Court grants the motion in this regard and excludes

26  evidence of the Dodge Neon's crash rating under FRE 401, 402, and 403.

27

28  */ / /*

1        **4.      Preclude NHTSA Recalls**

2        TRW then seeks to exclude "any evidence, testimony, or argument regarding recalls"

3    because "[t]here have been no recalls by the NHTSA of the 1998 Dodge Neon related to

4    [Thompson's] AECM defect claims," and recalls of other products are irrelevant.  Doc. 185 at 3-4.

5    In response, Thompson argues that this issue is moot because she does not intend to introduce

6    evidence or argument for recalls of a different product and/or a different problem than the one she

7    alleges in this case.  Doc. 204 at 7.  Thompson will be held to her representation that she will not

8    seek to introduce evidence of recalls of other products, and TRW's motion in limine is denied as

9    moot on this point.

10       **5.      Preclude Audio from the Day in the Life Video**

11       Next, TRW asks the court to prohibit Plaintiff from playing any audio on her "day in the life

12   video" because it is inadmissible hearsay and its probative value is substantially outweighed by the

13   danger of unfair prejudice, confusion of the issues, or misleading the jury.  Doc. 185 at 4. Thompson

14   notes that she replaced the original background music with instrumental music and she re-urges the

15   arguments made in her Third Omnibus Motion in Limine seeking to preadmit her videos.  Doc. 189

16   at 10.  The Court reserves its ruling on this motion until after reviewing the DVD.

17       **6.      Seatbelt Habit Testimony**

18       TRW also seeks to exclude "any evidence, testimony, or argument concerning plaintiff's

19   claim she 'always used' her seat belt or other similar seat belt usage habit testimony or evidence."

20   Doc. 185 at 4.  Thompson responds that she has "every right" to discuss her seatbelt use, and that if

21   such use becomes an issue in this case, she will lay the foundation necessary to show that her

22   practice was to wear her seatbelt every time she rode in a car.  Doc. 204 at 8.  As Rule 406 permits

23   properly authenticated habit evidence, and it remains to be determined whether Plaintiff can lay the

24   proper foundation for such evidence, the Court finds that any ruling on this issue is premature and

25   denies the motion on this point.

26       **7.      Police Conclusions Regarding Plaintiff's Seatbelt Use**

27       Next, TRW seeks to exclude any evidence from Officer Jeff Whipple or based on the Nevada

28   Traffic Accident Report regarding Thompson's use or non-use of a seatbelt.  TRW argues that

1   Whipple did not observe the accident, is not a seatbelt expert, and did not inspect the seat belt or

2   make an independent determination of whether Thompson was wearing her seat belt at the time of

3   the crash.  Doc. 185 at 4.  In sum, Whipple is not an expert and lacks personal knowledge sufficient

4   to allow his testimony on this point. *Id.*

5         In response, Thompson argues that she told Officer Whipple, the first Metro police officer

6   whom she spoke with after the accident, that she was wearing her seatbelt at the time of the crash.

7   Doc. 204 at 9-10.  Thompson argues that although she did not have her seatbelt on at the time

8   Officer Whipple arrived, it is rare that a driver will continue wearing her seatbelt after a crash.  *Id.* at

9   10.  Thompson also argues that as a fact witness, Whipple can testify about his own experience.  *Id.*

10  Thompson also argues that Whipple's notation in his police report that Thompson was wearing her

11  seatbelt is admissible under the business record exception to the rule against hearsay.  *Id.*  All of this

12  evidence is designed to counteract TRW's likely attempt to present evidence that Thompson was not

13  wearing her seatbelt at the time of the crash.  *Id.* at 10-11.

14        Rule of Evidence 701 provides, "If a witness is not testifying as a expert, testimony in the

15  form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b)

16  helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not

17  based on scientific, technical, or other specialized knowledge within the scope of Rule 702."[37]

18  Officer Whipple is not testifying as an expert, he lacks personal knowledge of Plaintiff's seatbelt use

19  at the time of this accident, and Plaintiff's statement to him that she was wearing her seatbelt is

20  inadmissible hearsay, as is the notation on the accident report that she was belted.  Accordingly, the

21  motion in this regard is granted, and Whipple will not be permitted to testify that Plaintiff was

22  wearing her seatbelt at the time of the crash, and the police report in this regard will not be admitted.

23

24        **8.     Preclude Equally Available Witnesses**

25        TRW next asks in a single sentence to preclude "any evidence, testimony, or argument TRW

26  has failed to call any particular witnesses that would be available equally to either Plaintiff or TRW,

27  through the subpoena process."  TRW offers no authority for its position, and the Court denies this

28  _____

    [37]        *Id.*

1    request on that basis under Nevada Local Rule 7-2(d).

2         **9.     Preclude Testimony of Unavailable Witnesses**

3         In yet another single-sentence request, TRW asks to preclude "any reference to the probably

4    testimony of any witness who is absent, unavailable, or otherwise not called to testify in this case.

5    Again, as TRW has offered no authority for its request, the Court denies it under Nevada Local Rule

6    7-2(d).

7         **10.    Preclude Equally Available Evidence**

8         Here, TRW asks to preclude "any evidence, testimony, or argument TRW has not identified

9    or offered into evidence as one of its trial exhibits any document or thing equally available to all

10   parties for offering."  Doc. 185 at 5. Again, as TRW has offered no authority for its request, the

11   Court denies it under Nevada Local Rule 7-2(d).

12        **11.    Preclude Undisclosed Defect Theories**

13        TRW next asks to preclude "Any reference to evidence, testimony, or argument about

14   alleged produce defects not properly pled or previously identified through discovery."  Doc. 185 at

15   5.  Again, as TRW has offered no authority for its request, the Court denies it under Nevada Local

16   Rule 7-2(d).    **12.    Preclude Unidentified Witnesses and Experts**

17        TRW then asks the Court to preclude "Any evidence, testimony, or argument regarding or

18   from any witness or expert witness" Thompson did not timely identify, and "any evidence,

19   testimony, or argument regarding or from any expert whose opinions were not timely disclosed by

20   Plaintiff."  Doc. 185 at 5.  TRW does not suggest what evidence this might include or who might

21   seek to offer it.  And, in response, Thompson argues that she intends to call several witnesses not

22   disclosed, including her child's father, the physicians who treated her for the pregnancy, and her

23   child's grandmother, some of which TRW did not object to in response to Plaintiff's in limine

24   request to allow their last disclosure.  Doc. 204 at 14.

25        Rule 37(c)(1) states that, "if a party fails to provide information or identify a witness as

26   required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply

27   evidence . . . at trial, unless the failure was substantially justified or harmless."[38]  The types of

28   _____
        [38]      *Id.*; *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

1   information required to be disclosed under Rule 26(a) include witnesses, Rule 26(a)(3)(A)(i), as well

2   as an identification of each document which is to be disclosed at trial.[39]  Parties have an ongoing

3   duty to supplement their disclosures.[40]  Although the Court is inclined to exclude any undisclosed

4   witnesses and documents not properly disclosed under the Rules, the Court declines to issue a

5   blanket order in this regard in a vacuum without some discussion by TRW of what evidence, if any,

6   would be impacted by that ruling.  Accordingly, the request is denied without prejudice to the ability

7   to reassert the argument in the future with respect to specific evidentiary items.

8           **13.     Sending a Message**

9           TRW next argues—this time in two sentences—that Plaintiff should be prevented from

10   telling the jury it should "send TRW a message" with a large verdict.  Doc. 185 at 5.  TRW states

11   without any analysis that such an argument would be irrelevant and its probative value is

12   substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the

13   jury.  *Id.* at 5-6.  The Court is not persuaded that the rules of evidence TRW cites preclude the type

14   of argument it seeks to bar.  As TRW has not offered good cause to preclude any particular

15   argument, this motion is denied.

16          **14.     Set the Standards**

17          TRW next asks the court to preclude "Any suggestion" that the jury should "set the conduct

18   standards in this state or country."  Doc. 185 at 6.  TRW relies on the same conclusory statements

19   and rules of evidence as above.  Although TRW has not demonstrated good cause to preclude such

20   argument, Thompson states that she will not make such a demand of the jury, and thus, there is no

21   controversy in this regard for the Court to resolve.  Doc. 204 at 15.  Thompson will be held to her

22   representation, and TRW's motion in limine denied as moot as to this point.

23          **15.     "Walk in Plaintiff's Shoes" and "The Golden Rule."**

24          Next, TRW asks to preclude Thompson from violating "the Golden Rule" by suggesting that

25   the jury should put itself in Thompson's shoes when determining the proper damage award in this

26   case.  Doc. 185 at 6.  Thompson's counsel agrees to follow the rules governing at trial, Doc. 204 at

27   _____

     [39]      Fed. R. Civ. Proc. 26(a)(3)(A)(iii).

28   [40]      *Id.* at 26(e).

1  16, leaving nothing for the Court to resolve in this regard.  Accordingly, TRW's request is moot and

2  denied.

3  **16.    Preclude Plaintiff from Breaking Down Damages by Time**

4  TRW next asks the Court to preclude "Any reference, statement, or appeal to the jury to

5  calculate damages by breaking down some time span into weeks, days, or even hours and then

6  multiplying that time-span by a dollar amount."  Doc. 185 at 6.  TRW offers a bald citation to a Fifth

7  Circuit Case apparently as support for this request.  *Id*.  Thompson states that she will not disclose

8  the method for her calculation for the highest damage amount the law will allow.  Doc. 204 at 16.

9  Thompson makes various arguments for why, in particular, her hedonic damages claims are

10  justifiably multiplied by a specific time frame.  Doc. 204 at 17-18.

11  TRW cites no controlling precedent for its request that a breakdown of damages by time

12  should be excluded from consideration.  Even the persuasive precedent TRW cites, *Westbrook v.*

13  *General Tire and Rubber Co.*, recognizes that such a calculation method may be proper if

14  accompanied by a limiting instruction.[41]  TRW's motion in limine is denied on this point.  If TRW

15  believes a limiting instruction is appropriate, it may suggest one to the Court for consideration at the

16  appropriate time.

17  **17.    Plans for Use of Judgment Proceeds**

18  Next, TRW asks to preclude "Any mention or reference as to how or in what manner

19  Plaintiff intends to spend or otherwise distribute proceeds from any judgment or verdict rendered in

20  this case."  Doc. 185 at 6.  TRW contends (without citing to any authority or offering any analysis in

21  support of its request) that such information would be irrelevant and more prejudicial than probative.

22  *Id*.  Thompson notes the thinness of TRW's motion in this regard and argues that her use of the

23  proceeds is relevant in part because both sides have identified life can planners who will offer

24  testimony regarding Thompson's future medical needs.  Doc. 204 at 19.  Thompson argues that she

25  has reduced the numbers to present day value, as the law requires.  *Id*.  Thompson counter-requests

26  an order from the Court permitting testimony about her intended use of any award.  *Id.* at 20.

27

28
_____

[41]     754 F.2d 1233, 1239-40 (5th Cir. 1985).

1        The Court finds that any ruling on whether evidence of this use is properly reserved until the

2   time of trial when the Court can view such plans in the context of the parties' evidentiary

3   presentation.  TRW's motion and Plaintiff's counter-request on this point are denied.

4        **18.      Preclude Demand for Materials Found in TRW's Files**

5        TRW next asks to preclude Plaintiff from demanding or requesting "matters found or

6   believed to be contained in TRW's files" in front of the jury because it would unduly harass and

7   prejudice TRW, a result that could be avoided if only Plaintiff raised the issues on a break or outside

8   the jury.  Doc. 185 at 7.  TRW offers no authority for this proposition and nothing to suggest that

9   this is a real risk at this trial.  As TRW has failed to substantiate its request with citation to any legal

10  authority, the Court denies it under Nevada Local Rule 7-2(d).

11       **19.      Preclude Post-incident Communications**

12       In yet another single-sentence request, TRW seeks to prevent "Any attempt to elicit

13  testimony from TRW's employees about post-incident communications between them and/or with

14  TRW's counsel since such communications are protected by the attorney-client privilege and work

15  product protection doctrine."  Doc. 185 at 7.  TRW offers no legal analysis to support its request,

16  and the Court declines the request to decide this issue in a vacuum without the opportunity to

17  evaluate any specific communication in context and with the benefit of argument.  Accordingly, this

18  request is denied without prejudice to TRW's right to object to any questions designed to elicit

19  privileged and protected communications.

20       **20.      Correspondence from Defense Counsel**

21       TRW next asks to exclude "Any correspondence of defense counsel as irrelevant and more

22  prejudicial than probative.  Doc. 185 at 7.  TRW does not cite to or provide the Court with any

23  specific correspondence, preventing the Court from undertaking a thoughtful admissibility

24  determination of this category of evidence.  The motion is denied.

25       **21.      Preclude Demand for Stipulations**

26       Arguing irrelevance and undue prejudice, TRW next seeks to prevent Plaintiff from

27  suggesting that TRW or its counsel has declined to stipulate to any fact or has declined to agree to

28

anything requested or demanded by Plaintiff or her counsel.  Doc. 185 at 7. Again the Court declines
to grant TRW's request as hopelessly vague, lacking in any real argument, and insufficiently
specific.

### 22.   Preclude Discussion of TRW's Counsel's Prior Experience

TRW also asks the Court to bar any discussion suggesting that TRW's defense counsel
routinely represent TRW or "any parents and subsidiaries of TRW, other corporations, insurance
companies, or other defendants in lawsuits."  Doc. 185 at 7.  Thompson opposes the request.  As
TRW has not offered the Court any analysis of why this information would be substantially more
prejudicial than probative, the motion is denied.

### 23.   Preclude Characterizations of TRW's Counsel

TRW also argues that any characterization of its counsel as "experts" or "hired guns" should
be excluded as improper attacks on counsel which will merely prejudice the jury.  Doc. 185 at 8.  In
response, Thompson states that she will not refer to TRW's counsel as "hired guns" or other
similarly derogatory remarks.  Doc. 204 at 22.  The Court will hold Thompson to her representation,
and with no controversy on this point, TRW's motion in limine is denied as moot.

### 24.   TRW's Attorneys Fees

TRW argues that any explanation of the money TRW spent on attorney's fees in this case, as
well as any comparison to the expenditures by Thompson and her counsel, is irrelevant and should
be excluded.  Doc. 185 at 8.  In response, Thompson claims that the relief TRW seeks is not clear
from its motion; she agrees that the amount of money TRW has spent defending the case to date
should not be introduced, but otherwise objects.  Doc. 204 at 23.  The Court does not perceive how
any reference to the amount of money expended by the parties' counsel is relevant to the prosecution
of this case.  TRW's motion in limine is granted on this point.

### 25.   TRW's Insurance

Next, TRW asks to preclude discussion that TRW is insured for any liability in this case and
to bar "any reference to any witness's involvement or work with insurance companies, third-party
administrator, or other insurance claims-handling entity or business.  It contends this evidence is
irrelevant and more prejudicial than probative.  Doc. 185 at 8.  Thompson agrees that insurance

1   information is not admissible but argues that evidence of how many times particular witnesses have

2   testified is fair game.  Doc. 204 at 23.  Evidence of TRW's insurance coverage is inadmissible under

3   FRE 411.  The Court grants this motion.

**26.    Settlement Talks**

5       TRW next asks to preclude evidence of settlement negotiations or settlement offers under

6   FRE 401, 402, 403, and 408.  Doc. 185 at 8.  TRW seeks to extend any such rulings to "comments

7   such as, 'TRW settled that case,' thereby improperly asking the jury to equate settlement with

8   admitted liability."  *Id.*   Thompson agrees, leaving no controversy in this regard for the court to

9   resolve.  Doc. 204 at 24.  The Court will hold Thompson to her representation, and denies TRW's

10  motion in limine as moot.

**27.    Discussion of Other Product Liability Lawsuits**

12      TRW next argues that any reference to or evidence, testimony or argument regarding other

13  notable product liability cases such as asbestos, pharmaceuticals, breast implants, and the Ford Pinto

14  as irrelevant and more prejudicial than probative.  Doc. 185 at 8-9.  Thompson objects to preclusion

15  of any evidence of how product liability cases generally "lead to safer products and greater

16  protection to consumers at large."  Doc. 204.  Thompson promises not to cite "the actual amounts of

17  the huge verdicts that were obtained in many of the cases TRW cites in its motion, and then ask the

18  jury to issue a similar award in this case."  *Id.*

19      At this time, the Court does not perceive how this evidence or discussion is relevant but

20  recognizes that the context may become apparent during trial, and TRW has not offered any real

21  analysis of this issue in support of its motion.  Accordingly, the Court denies this motion without

22  prejudice to the parties' ability to ask the Court to revisit this issue during trial.

**28.    Media Reports of Alleged TRW Product Defects**

24      TRW next seeks to exclude as hearsay, and more prejudicial than probative any media report

25  regarding an alleged investigation of an alleged defect in any TRW product.  Doc. 185 at 9.

26  Thompson responds that TRW has not provided examples of the media reports in question, but states

27  she has no intention of introducing any media reports of TRW defects.  Doc. 204 at 24.  As it

28  appears that there is no controversy in this regard, the motion is denied as moot.

### 29.    TRW's State of Mind

Next TRW asks to preclude testimony by individuals who have never worked at TRW from interpreting TRW documents as evidence of TRW's state of mind, knowledge, or intent.  TRW argues that such evidence would be irrelevant and more prejudicial than probative and that these witnesses lack the personal knowledge necessary to offer such testimony.  Thompson opposes the request.  Again, TRW's failure to offer any real analysis on this point or identify even a single example of anticipated testimony in this regard prevents this Court from making an informed decision on this request.  Accordingly, the Court denies the motion.

### 30.    Persons in the Courtroom

TRW's next single-sentence request is for the Court to preclude any reference to persons present or not present in the courtroom, including the identity of observers.  Doc. 185 at 9.  Although TRW baldly cites to the evidence rules regarding relevancy, it offers no reason at all for such an *in limine* ruling. TRW's motion is denied.

### 31.    Deposition Objections

As its next argument, TRW notes that "The sole purpose of deposition objections is to preserve issues for resolution by the Court at the time of trial," and the Court presumes it offers this note because it wants the Court to exclude objections in deposition transcripts or trial transcripts.  Doc. 185 at 9.  The Court construes TRW's motion as a request to prevent the parties from reading or playing to the jury objections contained in deposition or trial transcripts.  Under Rule 30(c)(2), deposition objections merely preserve the evidentiary issue for trial.[42]  Reading objections to the jury is thus irrelevant and TRW's motion in limine is granted on this point; the parties should take care to redact any objections from the deposition and trial transcripts they intend to introduce at trial.

### 32.    The Effect of the Jury's Answers

TRW next asks the Court to preclude "Any reference to or attempt to inform the jury of the effect of its answers to questions in the charge, or any statement that the trial judge or appellate court has the duty, opportunity or right to reduce the jury's verdict."  Doc. 185 at 10.  Quite simply, the

---

[42]    *See* Rule 30(c)(2).

1   Court has no idea what TRW is asking for with this request, and it is denied.

2       **33.    Reducing/Raising the Jury Award**

3         In yet another vague, incomplete, single-sentence request, TRW asks to preclude "Any

4   reference or statement to the jury that the Court can reduce the amount of any jury award, but cannot

5   raise the amount of such award." *Id*. Thompson concedes that neither she nor TRW should be

6   permitted to discuss the Court's ability to adjust the jury award, leaving no controversy for the Court

7   to decide. Doc. 204 at 26. Accordingly, the motion is denied as moot.

8       **34.    Motion Practice**

9         TRW's penultimate request is to preclude "Any suggestion TRW did or could have filed any

10   motions seeking a ruling on the merits of Plaintiff's claims, such as a motion for summary judgment

11   or motion to dismiss, or the rulings on any such motions." *Id*. Thompson agrees. Doc. 204 at 26-

12   27. This leaves nothing for this Court to resolve in this regard, and the motion is denied as moot.

13       **35.    This Motion**

14         Finally, TRW asks to preclude any reference to the instant motion as irrelevant and more

15   prejudicial than probative. Doc. 185 at 10. Thompson agrees that "[o]nce this Court has issued its

16   rulings on the parties' motions, there will be no need to discuss [those] rulings with the jury." Doc.

17   204 at 27. Again it appears that there is no controversy as to this final point, and TRW's motion is

18   denied as moot.

19                          **Conclusion**

20         Accordingly, it is **HEREBY ORDERED** that:

21   1.    Thompson's First Omnibus Motion in Limine to Exclude Evidence, Testimony and

22         Arguments of Defense Counsel **(Doc. 183) is GRANTED in part and DENIED in part**;

23   2.    Thompson's Second Omnibus Motion in Limine to Exclude Evidence, Testimony and

24         Arguments of Defense Counsel **(Doc. 184) is GRANTED in part and DENIED in part**;

25   3.    TRW's Motion in Limine **(Doc. 185) is GRANTED in part and DENIED in part**;

26   4.    Thompson's Motion in Limine to Preclude the Defendant and/or its Experts to Testify or

27         Submit Evidence or Argument at Trial That the AECM in Plaintiff's Vehicle Was "State of

28         the Art" **(Doc. 186) is DENIED**;

5.    Thompson's Motion in Limine to Preclude Any Testimony, Evidence or Argument During Trial Regarding TRW's AECM/Algorithm Protection Against Injury Due to Deployment of Air Bags with out of Position Occupants **(Doc. 187) is DENIED**;

6.    Thompson's Motion in Limine to Preclude Any Testimony, Evidence or Argument During Trial Regarding TRW Testing its AECM/Algorithm Against Concatenated Events  **(Doc. 188) is DENIED**;

7.    Thompson's Third Omnibus Motion in Limine to Exclude Evidence, Testimony and Arguments of Defense Counsel **(Doc. 189) is GRANTED in part and DENIED in part**;

8.    Thompson's Fourth Omnibus Motion in Limine to Exclude Evidence, Testimony and Arguments of Defense Counsel **(Doc. 190) is DENIED**; and

9.    Plaintiff's Motion for Leave to File a Supplement to Section 6 of her Second Omnibus Motion in Limine **(Doc. 213) is DENIED**

for all the reasons set forth in this order.

DATED: June 2, 2014

_____
JENNIFER A. DORSEY
UNITED STATES DISTRICT JUDGE