# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| Nicole Thompson, | Case No.: 2:09-cv-1375-JAD-PAL |
| Plaintiff, | |
| v. | **Order re: Day in the Life Videos** [Doc. 189] |
| TRW Automotive U.S., LLC, | |
| Defendant. | |

This is a product-liability crashworthiness case. Plaintiff Nicole Thompson generally alleges that the passenger-restraint system in her 1998 Dodge Neon malfunctioned during a collision, causing her to suffer greater injuries than she would have had the system worked properly. In advance of the upcoming trial, Plaintiff moved to preadmit two day-in-the-life videos—one depicting Thompson in the weeks following her 2007 injuries; and the other depicting her caring for her infant son a year ago in May 2013. Having viewed and carefully considered the videos,[1] the Court now denies Thompson's motion to preadmit these items in their current form.

## Discussion

Day-in-the-life videos are a valuable tool in personal-injury jury trials. Such demonstrative items are "often desired because films illustrate, better than words, the impact the injury had on the plaintiff's life."[2] "The video medium is unsurpassed in its ability to communicate the consequences

---

[1] The videos were provided to the Court *in camera* and in response to this Court's order. *See* Doc. 223 at 17.

[2] *Bannister v. Town of Noble, Oklahoma*, 812 F.2d 1265, 1269 (10th Cir. 1987).

Page 1 of 6

of personal injury and disability in a totally captivating and compelling way."[3]

"Reality reveals to us that, unfortunately, some day-in-the-life videos are no longer being used for their proper purposes but instead, are being introduced solely for the purpose of eliciting sympathy from the jury."[4] While courts recognize that day-in-the-life videos are often appropriate if they merely provide the jury with a true and accurate visual depiction of the plaintiff's daily activities, courts are also careful to exclude them when they go beyond that limited purpose and contain hearsay statements or other elements plainly designed to evoke sympathy or gain an unfair advantage, or when the plaintiff testifies at trial and is capable of presenting the same type of evidence in the standard method: through her own testimony.[5] Thus, day-in-the-life videos present Rule 403 and hearsay concerns that may compel their exclusion from trial.

**A.**     *Nicole's Story*

Plaintiff's proposed video presentation entitled *Nicole's Story* is a heavily produced presentation. It starts with her attorney's logo and then moves to the Plaintiff standing before a large sheet-music version of a song that (as she tells us in her verbal introduction) she composed. The song itself—performed by string musicians—plays in the background. Nicole explains that she "used to be able to play it on the violin." She tells us that she "had many achievements in [her] life and you will see some of them here, but they all don't compare to learning how to walk and talk again after my collision on April 27, 2007, the day [her] hopes and dreams were all changed." We then see the title "Nicole's Story Past & Present," followed by a parade of scrapbook pages, photographs, and certificates and awards issued to Nicole, all appearing on the screen as her composition plays as the soundtrack.

The date of the accident then flashes on the screen followed by photos of Nicole's wrecked vehicle in the junkyard. In the corner of the screen appears Nicole's mother, who narrates the next

---

[3]     40 Am. Jur. Trials 249 *Using or Challenging a "Day-in-the-life" Documentary in a Personal Injury Lawsuit* § 1 (1990).

[4]     *Eckman v. Moore*, 876 So. 2d 975, 985 (Miss. 2004).

[5]     *See, e.g.*, *id.* at 985; *Bolstridge v. Cent. Maine Power Co.*, 621 F. Supp. 1202, 1204 (D. Me. 1985) (collecting cases).

1  portion of the video.  She tells us that on the day of the accident "our family's lives were changed
2  forever," and describes that there are "no words" to describe "the pain" she "felt, watching the terror
3  in [her] daughter's eyes while she suffered a stroke," pain that "only increased as [she] watched [her
4  daughter] struggle through her recovery."  Nicole's mother explains that Nicole is "not the girl you
5  would have met before this crash" and reveals that the scripted introduction by Nicole at the
6  beginning of the video "took her 24 takes."  She tells the audience that she now "live[s] every day of
7  [her] life in fear of what the future holds for Nicole" and describes how this girl with a "once-
8  limitless future now struggles with the simplest, every-day tasks."  She talks about her "many
9  sleepless nights filled with worry," as photos of Nicole and her injuries—taken shortly after the
10 accident—fade in and out on the screen.

11        Eventually the date May 15, 2007, appears on screen.  We then see Nicole and her mother in
12 their home being interviewed by a voice behind the video camera.  Nicole describes her injuries as
13 her mother cuts off a bandage on her knee, revealing a large wound.  Both Nicole and her mother
14 describe her condition and tell the story related to the treatment of her injuries to that point, along
15 with Nicole's various diagnoses; Nicole's mother describes the knee injury as "kinda scary" and
16 notes, among other things, that Nicole hit her head on the roof of the vehicle.  (Nicole's mother was
17 not in the car at the time of the crash).  Nicole's mother does the majority of the talking, often
18 prompted by leading questions from the disembodied voice behind the camera.  (Example: "So then
19 your right hand hit the window as you were being propelled forward?").  As Nicole and her mother
20 are cataloguing her injuries from the crash for the camera, Nicole volunteers, "the seatbelt didn't
21 lock and the airbag didn't deploy."  The video presentation ends with the words on the screen "To
22 Be Continued. . . ."

23        This heavily produced presentation greatly exceeds the permissible scope and goal of a day-
24 in-the-life video.  The dramatic narration by both Nicole and her mother and the soundtrack are
25 designed to evoke the jury's sympathy.  The narration is also hearsay as it consists entirely of out-of-
26 court statements offered to prove the truth of the matters asserted.  Although a handful of comments
27 may qualify as present sense impressions or evidence of Plaintiff's state of mind, most of the
28 narration and interview responses are not statements describing or explaining an events as they are

1  being perceived or immediately thereafter.[6] Nicole's introduction and her mother's narration discuss
2  events in the past—and, for the most part, far in the past (Nicole's childhood, public schooling, and
3  pre-crash hopes, dreams, and abilities). The May 15th video takes place three weeks after the crash,
4  and many of the interview-prompted statements about Nicole's injuries and condition reach back to
5  the events of the crash—events that Nicole's mother talks about even though she did not personally
6  observe them. And Rule 803(5) does not afford any basis for Plaintiff to offer her own recorded
7  recollection.[7]

8      Both Nicole and her mother are anticipated to testify at trial, and all of the statements they
9  offered in the *Nicole's Story* video can be presented during their testimony at trial, allowing the
10 defendant the opportunity to object to leading questions and cross examine these witnesses on their
11 assertions.[8] Although portions of the video, such as clips depicting Nicole's injuries as she was
12 experiencing them on May 15, 2007, may be admissible in a different format, without the audio, and
13 with the aid of testimony at trial,[9] the *Nicole's Story* video is not admissible in its current format
14 because it is rife with hearsay and its probative value is substantially outweighed by the possibility
15 of undue prejudice. Accordingly, Plaintiff's *in limine* request to admit the *Nicole's Story* video is
16 denied.

17 **B.**  ***Nicole and Carter***

18     The 28 ½ minute-long video entitled *Nicole & Carter* begins with the narration of
19 Plaintiff's counsel explaining from behind the camera that it is May 1, 2013, and he's outside
20 Nicole's home. Counsel then proceeds inside and we see Nicole and her son Carter on the couch

---

[6]    *See* Fed. R. Evid. 803(1).

[7]    *See* Fed. R. Evid. 803(5) ("the record . . . may be received as an exhibit only if offered by an adverse party").

[8]    *See* Fed. R. Evid. 611; *Bolstridge*, 621 F. Supp. at 1204 (excluding day-in-the-life video when, *inter alia*, the plaintiff "appears to be able to testify on her own behalf" and "can demonstrate to the jury in open court the activities similar to those depicted in the videotape" and her "relatives and physicians" could "offer similar testimony," rendering the video "merely cumulative of testimonial evidence which is available to the Plaintiff").

[9]    *See Bannister*, 812 F.2d at 1270 (noting that "The possibility that a film will be prejudicial is significantly reduced when the subject of that film can be cross-examined at trial.")

next to Carter's father.  Both parents are being interviewed by several voices behind the camera (including the voice of Plaintiff's counsel Ed Achrem, Esq.) who spend the next nearly half an hour candidly interviewing Nicole with leading questions about her pregnancy, Carter's birth, and how she is caring for him with her disabilities.  The interviewers also ask Carter's father about the couple's infant-care routine.  Nicole is filmed changing the baby's clothes and diapers, preparing bottles, demonstrating how she holds him for feedings, getting Carter in and out of his car seat, picking the baby up from his bassinet, and demonstrating where she bathed him.

Although there is some helpful and likely admissible footage of Nicole's daily routine with her son, the pervasive interview format of the video renders it inadmissible in this format.  The bulk of the audio on this presentation is hearsay: some of it is Nicole's present-sense description of what she is doing at that moment, and snippets are not intended as the truth of the matters asserted; but the majority of the interview is intended to elicit something akin to testimony about past events and how Nicole and Carter's father generally manage the care of their son.

Both Nicole and the baby's father have been disclosed as anticipated witnesses at trial and they can offer at trial the very same testimony they supplied to Plaintiff's counsel on the video, and that is how the testimony about these events and practices should come in—not with a staged, at-home interview by Plaintiff's counsel.  This is consistent with the policy in FRCP 32(a)(3) that allows videotaped depositions only when the witness is unavailable or "exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court."[10]  Moreover, the fact that the couple offered 30 minutes of answers to prepared questioning (often with leading questions) without defendant's opportunity for a contemporaneous cross examination renders this staged, out-of-court interview more prejudicial than probative in its present format.

Additionally, Carter is now more than a year old, so the relevancy of Nicole's daily routine nearly a year does not merit a half-hour video presentation.  Thus, even if some form of this video (sans audio) may be admissible, the risk of delay and wasting the jury's time with the full version

---

[10] *Id.*

outweighs the probative value that playing the whole DVD would have. Thus, the Court does not rule out the possibility that some portion of the video footage may be admissible without the audio, but in the current format—and in this length—the *Nicole & Carter* video will not be admitted.

**Conclusion**

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's request to pre-admit the *Nicole's Story* and *Nicole & Carter* day-in-the-life videos in their present format [Doc. 189 at 8-16] is DENIED.

DATED: June 11, 2014

_____
JENNIFER A. DORSEY
UNITED STATES DISTRICT JUDGE